Jacqueline C. HEAD, Individually and as Successor, Trustee Under the FTW Living Trust, Appellant,

v.

U.S. INSPECT DFW, INC. f/k/a Affordable Inspections, Inc. and John Fox, Appellees.

No. 2–03–152–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 24, 2005.

Fielding, Parker, Hallman and Timothy G. Chovanec, Fort Worth, and Bragg, Chumlea, McQuality and Mark S. McQuality and Cheryl C. Turner, Dallas, for Appellant.

Ray and Wilson and Donald H. Ray, Fort Worth, for Appellees.

Panel A: CAYCE, C.J.; GARDNER and McCOY, JJ.

## OPINION

ANNE GARDNER, Justice.

### INTRODUCTION

Jacqueline Head appeals from the trial court's grant of summary judgment in favor of U.S. Inspect DFW, Inc. f/k/a Affordable Inspections, Inc. ("Affordable") and John Fox. Head argues that the trial court erred in (1) holding that the professional services exemption barred her claims under the Deceptive Trade Practices Act ("DTPA"), (2) holding that a limitation of liability clause in Head's contract with Affordable applied to her breach of contract and negligence claims, and (3) awarding attorneys' fees to Appellees. We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

### Purchase and Inspection of the Residence

In 1998, the FTW Living Trust, through its trustee Leonard Rodes, contracted to purchase a home in Fort Worth from Alfred and Susan Finley for the benefit of Appellant Jacqueline Head, as sole beneficiary of the FTW Living Trust. Head intended to occupy the home as her residence. Mike Goodrich, a Fort Worth attorney board certified in real estate law, assisted Head and Rodes during this process.

Prior to Head's purchase of the home, four separate inspections were conducted. The inspection that is the subject of this lawsuit was conducted by Affordable.[1] On June 19, 1998, Head entered into a written agreement with Affordable for a "Real Estate Inspection" of the home. The contract provided that a "licensed real estate inspector" would perform the inspection, limited to a visual inspection of the "Readily Accessible Items Agreed To Be Inspected." The contract specified that neither the inspection nor the report would include any warranties, express or implied, unless specifically stated. Additionally, the agreement contained a clause that limited liability for "errors and omissions" to the amount paid for the inspection, not to exceed $500. This limitation of liability clause was set apart from the other provisions, enclosed in a box, and separately initialed by Head. The contract was signed by Head and by John Fox, identified as "Inspector."

According to Head's affidavit, filed in response to Appellees' Motion for Summary Judgment, she was present when John Fox, assisted by Jim Blaeser, performed the inspection on June 19, 1998. Head averred that Blaeser, whom she only later learned was an "apprentice inspector" rather than a licensed real estate inspector, conducted the inspection of the attic and roof of the home without the assistance or supervision of Fox. Head alleges that Fox never entered the attic nor climbed on the roof, although Fox stated in a deposition, attached to Head's response to Appellees' motion for summary judgment, that he did climb onto the roof and did perform the roof inspection.

Following the inspection, Fox prepared an inspection report, which was provided to Head and her attorney. The report was signed by John Fox, but not Jim Blaeser. The inspection report indicated the areas of the residence inspected by Fox and included a summary of potential problem areas and items in need of repair. The report is checkmarked, showing that the rooftop was accessible and that the roof, roof structure, and attic were inspected. The report is checkmarked indicating "Evidence of Visible Water Penetration" on the roof, but there is also a notation that

---

1. Head obtained several other inspections of the home before entering into the contract to purchase. Prather Engineering Consultants conducted an inspection limited to the foundation, according to Head, which was reported to be in excellent condition. Additionally, Mike Goodrich contacted Rudy Flores to conduct an inspection to determine the general condition of the house. Flores provided an affidavit stating he met with Head at the residence and orally reported to her that the house was in good shape, except for some hairline cracks that were visible on the west wall. Head states in her affidavit attached to her response to Appellees' motion for summary judgment that Flores did not report any opinion as to the condition of the roof. Blake Wilson, a professional engineer, conducted a structural investigation to determine the feasibility of constructing a second story addition onto the existing garage. Head indicates in her affidavit that she was not provided Wilson's report prior to closing.

the roof was "Performing its function as intended *AT THIS TIME*." [Emphasis in original.] Head stated in her affidavit that she and Fox discussed particular problem areas that he thought were important, such as missing weather seals and the absence of caulking from some of the windows, but that Fox never told her that the weather seals or caulking were causing water penetration, nor did he mention any problems with the roof.

### Discovery of Leaks

After closing on the home in July of 1998, Appellant hired contractors to make some minor updates and modifications to the home, which included changing wall and window treatments. Appellant stated in her affidavit that due to sensitivity to paint and "other construction related materials" she did not plan on moving into the home until after the painting was complete. Head went to the house on October 2, 1998 during a rainstorm and met with several contractors from A Window Warehouse. Head stated that she and the contractors discovered water running down the interior of the kitchen windows and pooling onto the countertop, water running down the interior of the glass block window in the master bathroom, and water leaking in from the living room ceiling. Head instructed the contractors to remove sheetrock from around the kitchen windows in an attempt to find the source of the leak and stated that when the sheetrock was removed, she observed "water, extensive wood rot, mold, and rusty nails."

Subsequently, A Window Warehouse provided a report to Head, noting its initial observations on October 2, 1998 and also containing a description of other damage observed on October 6, 1998. The report supports Head's observations in the kitchen and also describes other water damage, including water in a light fixture and stains on the ceiling in the garage and evidence that the living room ceiling had been recently textured, covering old water stains. The report from A Window Warehouse shows that the roof was inspected in an attempt to locate other potential sources of water damage, makes numerous notations of problems with the roof, and concludes that the roof should be inspected by a roof professional. Head then hired PSM Consultants to conduct an inspection to determine the condition of the roof and walls and to determine the source of the leaks. The report provided by PSM Consultants lists numerous anomalies on the roof that, in its opinion, would allow water to penetrate into the house. The report by PSM concluded that, in its opinion, the problems discovered on the roof existed prior to 1998 and "should have been obvious to anyone familiar with proper wall and roof construction methods and materials."

On November 9, 1998, a structural and foundation inspection was conducted by David Bulla, a structural engineer. He conducted a visual inspection and compiled a report on the roof. He indicated that "[o]verall, this roof is in very poor condition and has not been properly constructed. Leakage into the interior and exterior walls is unavoidable in the present condition." The report continues that "[t]he roof system has excessive deterioration; and the shingles are in poor condition and improperly installed.... The roof has several areas that are leaking and allowing water to enter the walls and interior of the residence. Total replacement will probably be necessary...." The report concludes that the "situation did not develop in a short period of time as indicated by the amount of patching and repair work that had been attempted" and the "extent of damage that was observed must have been developing over several years."

## LAWSUIT

On July 28, 2000, Head and Leonard Rodes, as trustee under the FTW Living Trust, sued the sellers of the residence, Alfred and Susan Finley; Affordable; and John Fox. On September 21, 2001, a "First Amended Original Petition" was filed leaving Head, individually and as successor trustee under the FTW Living Trust, as the sole plaintiff. Head asserted claims for violations of the DTPA and fraud against the Finleys[2] and breach of contract, breach of warranty, negligence, and DTPA violations against Affordable and Fox.

### Causes of Action Against Affordable and Fox

In her lawsuit, Head alleged that Affordable and Fox (1) breached their contract by failing to perform in substantial conformity with the contract and failing to perform in a good and workmanlike manner; (2) breached an implied warranty that their services would be performed in a good and workmanlike manner; (3) were negligent in failing to "detect severe decay, mold, fungal growth and extensive deterioration caused by excessive water intrusion"; and (4) violated several provisions of the DTPA, including violations of the laundry list provisions,[3] breach of express and implied warranties, and unconscionable action or course of action. TEX. BUS. & COM.CODE ANN. § 17.50(a)(1), (2), and (3) (Vernon 2002).

### Summary Judgment

On December 11, 2001, Affordable and Fox filed a traditional motion for summary judgment on the pleadings, asserting that they were entitled to judgment as a matter of law on all Head's claims. First, they asserted that Head's DTPA claims were barred by the professional services exemption, claiming the inspection and report by Fox was a professional service "the essence of which is the providing of advice, judgment, opinion, or similar professional skill." TEX. BUS. & COM.CODE ANN. § 17.49(c) (Vernon Supp.2004-05). Secondly, they moved for summary judgment on the implied warranty claim asserting that there is no implied warranty on the type of service they provided. Finally, Affordable and Fox moved for summary judgment on the breach of contract and

2. On July 7, 2003, the trial court granted summary judgment in favor of the Finleys. Head appealed and this court affirmed. *Head v. Finley*, No. 2-03-296-CV, 2004 WL 1699895 (Tex.App.-Fort Worth July 29, 2004, pet. filed) (mem.op.).

3. Specifically, Head alleged that Affordable and Fox engaged in the following false, misleading, and deceptive acts under section 17.46(b):

(2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
. . . .
(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

. . . .
(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
. . . .
(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;
. . . .
(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.
TEX. BUS. & COM.CODE ANN. § 17.46(b)(2), (5), (7), (12), and (24) (Vernon Supp.2004-05).

negligence claims based upon the limitation of liability clause in the inspection agreement, which limited recovery to the amount paid for the services not to exceed $500. Affordable and Fox asserted that they had tendered $348.27 to Head, which was the amount paid for the inspection, and therefore they had no further liability.

Head filed a response to the motion for summary judgment, asserting that the DTPA claims fell within statutory exceptions set forth in the professional services exemption. Head specifically asserted that Affordable and Fox made express misrepresentations of material fact and express warranties that could not be characterized as advice, judgment, or opinion; failed to disclose information in violation of section 17.46(b)(24); and engaged in unconscionable action.[4] Additionally, Head challenged the validity of the limitation of liability clause as unconscionable or void due to fraud and failure of consideration.

On January 24, 2003, the trial court granted summary judgment in favor of Affordable and Fox. The trial court's order specifically stated that it considered the "pleadings timely filed, the motion for summary judgment, [and] the response filed by Plaintiffs" but that it did not consider "Plaintiff's Second Amended Original Petition or Defendant's Objection to Affidavit of Jacqueline C. Head" because they were not timely filed. The trial court's order specifically set forth the grounds upon which the summary judgment for Affordable and Fox was granted, stating that (1) Affordable and Fox were exempt from the DTPA causes of action under the professional services exemption and (2) Af-

fordable and Fox were liable for negligence and breach of contract, but such claims were limited to $348.27 under the limitation of liability clause. The court further awarded attorneys' fees in favor of Affordable and Fox in the amount of $25,861.58 with interest. Head appealed to this court; however, we abated the appeal and remanded to the trial court to clarify whether its summary judgment disposed of Head's breach of implied warranty claim. We reinstated the appeal after the trial court entered a corrected order specifying that the summary judgment order disposed of all claims, including the breach of implied warranty claim.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex.2004). In a traditional summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Southwestern Elec. Power Co.*, 73 S.W.3d at 215; *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Great Am. Reserve Ins. Co. v. San Anto-*

---

4. The DTPA provides that the professional services exemption does not apply to

    (1) an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion;
    (2) a failure to disclose information in violation of Section 17.46(b)(24);

    (3) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion; [or]
    (4) breach of an express warranty that cannot be characterized as advice, judgment, or opinion.
    Tex. Bus. & Com.Code Ann. § 17.49(c)(1)-(4).

*nio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999). The defendant as movant must present summary judgment evidence that negates an element of the plaintiff's claim. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Id.*

■ A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996).

## DTPA

Head argues that the trial court erred in granting the summary judgment on her DTPA causes of action because she raised genuine issues of material fact as to whether her claims were within one or more of the exceptions to the professional services exemption from DTPA liability. Appellees Affordable and Fox contend that no exceptions to the professional services exemption were pleaded at the time of the summary judgment hearing, and they argue that the factual allegations recited in Head's brief refer to her Fourth Amended Original Petition, which was not considered by the trial court in granting Appellees' motion. Appellees also take the position that Head had the burden to establish that her DTPA claims fell within the exceptions to the professional services exemption and that she failed to bring forward any summary judgment evidence to meet this burden. Appellees conclude that, because Head failed to meet her burden to properly plead or present evidence raising a fact issue as to one or more of the exceptions to the exemption in the trial court, she cannot now raise those statutory exceptions to the professional services exemption on appeal in an attempt to defeat the motion for summary judgment.

Head does not dispute that her Fourth Amended Petition was not considered by the trial court, nor does she argue that the trial court considered her second and third amended petitions. Nevertheless, we cannot agree with Appellees' argument that Head is precluded from relying on the statutory exceptions to the professional services exemption. First, Head pleaded DTPA causes of action for laundry list

violations, failure to disclose information, breach of express warranty, and unconscionability in her First Amended Original Petition, which was before the trial court at the time of the summary judgment hearing.

The professional services exemption from liability is properly characterized as an affirmative defense that must be pleaded because it is a plea of confession and avoidance. TEX.R. CIV. P. 94; see David Skeels, *The DTPA's Professional Services Exemption: Let 'Em Be Doctors and Lawyers and Such*, 55 BAYLOR L.REV. 783, 828 (2003).[5] Head does not argue that the inspection and report furnished by Appellees did not constitute professional services, and we will not address that issue. Instead, Head assumes *arguendo* that Appellees provided professional services. We have found no case considering whether the exceptions listed in section 17.49(c) to the professional services exemption from liability under the DTPA constitute counter-affirmative defenses, but we likewise need not decide that issue because Head concedes that she had the burden to raise a fact issue as to whether her claims fell within one or more of the exceptions.

■ A plaintiff may raise a fact issue by coming forward with evidence on each element of its own counter-affirmative defense to the defendant's affirmative defense. *See Ryland Group*, 924 S.W.2d at 122 (holding that to defeat summary judgment on statute of repose, plaintiff had

burden to raise fact issue on fraudulent concealment); *American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex.1994) (same).

■ Although she had not specifically pleaded any of the statutory exceptions to the exemption in her First Amended Original Petition, Head asserted the exceptions to the professional services exemption as well as facts to support the exceptions in her response to the motion for summary judgment. Further, she provided evidence by her affidavit and attached documentation, as detailed above, in an effort to show that her claims fell within exceptions to the exemption. The trial court stated in its order granting summary judgment that it considered all timely filed pleadings, the summary judgment motion, and the response filed by Head. The trial court further stated in its order that it considered the summary judgment evidence admitted for consideration and that it did not consider "Defendants' Objection to Affidavit of Jacqueline Head."

Appellees did not object to Head's response in the trial court on the grounds that Head failed to plead the exceptions to the professional services exemption. Thus, their argument that she failed to plead the exceptions is now waived, and we may consider the exceptions raised by Head's response to the motion for summary judgment and the evidence provided by her affidavit to determine whether a fact issue was raised.[6] *See Roark v. Stall-*

---

5. Appellees properly pleaded the professional services exemption in their third amended answer. A defendant moving for summary judgment has the burden of establishing its affirmative defense as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). Appellees moved "on the pleadings" for summary judgment as to all Head's DTPA claims on the basis that Head's pleadings failed to state causes of action for violations of the DTPA

because all her claims were for professional services.

6. *See* TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Clear Creek Basin*, 589 S.W.2d at 677 (explaining that the issues required by the rule to be expressly presented are those pointed out to the trial court in written motions,

*worth Oil & Gas, Inc.,* 813 S.W.2d 492, 494–95 (Tex.1991) (recognizing rule that unpleaded claims tried by express or implied consent are treated as if raised by pleading applies to issues raised in motion for summary judgment); *Bradt v. West,* 892 S.W.2d 56, 66 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (holding unpleaded affirmative defense raised in motion for summary judgment may be considered absent objection to lack of pleading). Therefore, we will address the merits of Head's claims to determine whether she has raised a fact issue that her DTPA claims fall within the exceptions to the professional services exemption.

### Express Misrepresentations

Head argues first that she raised an issue of fact that Appellees made express misrepresentations of fact "that cannot be characterized as advice, judgment, or opinion" and are thus within the first exception to the professional services exemption to DTPA liability. TEX. BUS. & COM.CODE ANN. § 17.49(c)(1). In her response to the motion for summary judgment, Head asserted that Appellees made misrepresentations that are actionable under section 17.46(b)(2), (5), (7) and (12), first, by promising in the inspection agreement to provide a "licensed real estate inspector" when, in fact, they did not, and, second, by furnishing her the inspection report stating that certain, specified items had been inspected personally by a licensed real estate inspector. *Id.* § 17.46(b)(2), (5), (7), and (12). Head further asserted that misrepresentations were made that the inspected items were performing their intended function. *Id.* She argues that these misrepresentations dealt with "factual conditions" rather than opinion and therefore

are outside the professional services exemption.

■ We cannot agree with Head's claim that the inspection report misrepresented "facts," rather than opinions, by stating that the roof and attic were performing their intended function. By the inspection agreement, Appellees expressly agreed to provide an inspection report that would "contain the *opinion of the Inspector* on the need for repair or replacement of the items inspected" and that "[i]t is agreed that *opinions* expressed by the Inspector *are only opinions* . . . ." [Emphasis in original.] Thus, the essence of the services to be provided by Affordable and Fox was to render professional opinions, for which any liability is exempted from the DTPA by the professional services exemption. *Id.* § 17.49(c) (exempting claims for damages based upon rendering of professional service, "the essence of which is the providing of . . . opinion)." The condition of the attic and roof at the time of the inspection was the very subject of the opinions agreed to be provided. The claimed misrepresentation as to the condition of the attic and roof in the report can only be characterized as "opinion." It is self-evident that the exception sought to be invoked by Head for "misrepresentation of material fact that cannot be characterized as . . . opinion" clearly does not apply. *Id.* § 17.49(c)(1). Characterizing the opinions as to the existing condition of the roof and attic contained in the report as "facts" as to existing conditions does not change their nature as opinions.

■ Likewise, Head's claim that Appellees made an express representation by promising an inspection by a "licensed real

written answers, or written responses to the motion); *Baker v. John Peter Smith Hosp., Inc.,* 803 S.W.2d 454, 457 (Tex.App.-Fort Worth 1991, writ denied) (stating that a non-

movant's response to a motion for summary judgment must present fact issues by means of proper summary judgment evidence such as a deposition, admission, or affidavit).

estate inspector" and her complaint that an apprentice, unsupervised by a licensed real estate inspector, performed the inspection instead relate directly to the level of expertise necessary for the opinions Appellees agreed to furnish. In determining whether Head's misrepresentation claim in this regard is barred by the professional services exemption, we look to the underlying nature of the claim, which is breach of contract and negligence in rendering the inspection services. *See Chemd, Inc. v. KPMG Peat Marwick, L.L.P.*, No. 05–00–00816–CV, 2001 WL 893989, at *6 (Tex. App.-Dallas Aug. 9, 2001, pet. denied) (not designated for publication) (holding that to determine whether claim was barred by professional services exemption, court would look to nature of underlying claim). The evidence relied upon by Head in this regard is testimony from the deposition of Fox, in which he admitted that a failure to personally supervise an apprentice would fall below the standard of care of a licensed real estate inspector.

A plaintiff by artful pleading cannot recast a claim in order to avoid the adverse effect of a statute. *In re Kimball Hill Homes Tex., Inc.*, 969 S.W.2d 522, 526 (Tex.App.-Houston [14th Dist.] 1998, orig. proceeding); *see Chemd, Inc.*, 2001 WL 893989, at *6 (holding complaint that accounting firm failed to advise plaintiff that it used less experienced auditors and fewer hours did not come within exception for failure to disclose facts not constituting advice, judgment, or opinion, when underlying substance of claim was professional negligence in performing audits); *cf. Garland Community Hosp. v. Rose*, 156 S.W.3d 541, 545 (Tex.2004) (holding claim that hospital was negligent in credentialing physician who performed surgeries on plaintiff was inextricably intertwined with and inseparable from quality of patient's treatment and, therefore, was a "health care liability claim" governed by the Medical Liability and Insurance Improvement Act).

Therefore, we hold that the trial court did not err in granting the motion for summary judgment as to Head's claims of misrepresentations under the DTPA. As in *Chemd, Inc.*, the essence of Head's complaints is that Appellees were negligent in rendering erroneous opinions based upon an apprentice's unsupervised inspection, upon which she relied in purchasing the house. Absent the alleged erroneous opinions, she would have no claim for the asserted misrepresentations regarding who would perform the inspection or how it would be performed. Thus, the asserted misrepresentations that a licensed real estate inspector would be used and was used are an inseparable part of the professional services of which she complains. By unsuccessfully attempting to characterize Appellees' agreement to furnish a certain quality of services as a misrepresentation of existing "fact," Head has failed to raise a fact issue within the exception for misrepresentations not constituting "judgment, advice, or opinion." TEX. BUS. & COM.CODE ANN. § 17.49(c)(1).

■ Additionally, Head's complaint regarding the failure to have a licensed real estate inspector perform the inspection is based upon a term in the inspection agreement. Thus, her claim that Appellees provided a report based upon an inspection only by an apprentice is, in effect, a claim that Appellees failed to fulfill a term of the contract.[7] Without more, fail-

---

7. Head asserted in her response not only that the contract represented that a "licensed real estate inspector" would be used but also that, by signing the report after the inspection, Fox represented that it had been performed by him when, in fact, the inspection was conducted by Blaeser, an apprentice inspector. However, Head admitted in her affidavit that

ure to perform a term of a contract is simply not a violation of the DTPA. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13–14 (Tex.1996) (holding alleged breach of contract, without more, does not allege a violation of the DTPA); *Conquest Drilling Fluids, Inc. v. Tri–Flo Int'l, Inc.*, 137 S.W.3d 299, 309 (Tex.App.-Beaumont 2004, no pet. h.) (holding alleged failure to fulfill promise to build unit free of defects did not state violation of DTPA under section 17.46(b)(2), (5), and (7)); *Cont'l Dredging, Inc. v. De–Kaizered, Inc.*, 120 S.W.3d 380, 390 (Tex.App.-Texarkana 2003, pet. denied) (holding misrepresentations that contract had been performed when it allegedly had not been gave rise to breach of contract only, not DTPA violation, when all the representations occurred inside the bounds of the contract); *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 92 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (holding alleged misrepresentations stemming from failure to comply with policy could not constitute deceptive acts under § 17.46(b)(2), (5), or (7) of DTPA); *see also Ken Pet. Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 357 (Tex. 2000) (holding indemnity provision of contract was merely an agreement and not misrepresentation that agreement conferred rights and benefits that it did not have or involve or that are prohibited by law, within section 17.46(b)(12)).

■ The determination of whether a breach of contract may also rise to the level of a misrepresentation sufficient to trigger the DTPA is a fact-driven inquiry. *Cont'l Dredging, Inc.*, 120 S.W.3d at 389 (citing *Munawar v. Cadle Co.*, 2 S.W.3d 12, 18 (Tex.App.-Corpus Christi 1999, pet. denied)). We are also mindful that we must liberally construe and comprehensively ap-

ply the provisions of the DTPA to promote its underlying purpose, which is the protection of consumers. *Posey v. Southwestern Bell Yellow Pages, Inc.*, 878 S.W.2d 275, 281 (Tex.App.-Corpus Christi 1994, no pet.). Additionally, we must construe the evidence offered in a light most favorable to Head as the nonmovant. *See Munawar*, 2 S.W.3d at 19 (summary judgment for the defendant disposing of an entire case is proper only if, as a matter of law, the plaintiff could not succeed on any of the theories pleaded).

■ "Whether the facts, once ascertained, constitute a DTPA misrepresentation is a question of law." *Cont'l Dredging, Inc.*, 120 S.W.3d at 389 (quoting *Munawar*, 2 S.W.3d at 18). Taking into consideration the principles recognized above and the summary judgment evidence, as a matter of law, we hold Head's claim that Affordable and Fox made actionable express misrepresentations by the promise to furnish an inspection by a licensed real estate inspector and by their representation that the inspection complied with the contract is founded solely on the breach of contract allegations and is not actionable as a claim of misrepresentations under the DTPA.

### Failure to Disclose

Head next asserts that she raised an issue of fact as to whether Appellees failed to disclose information in violation of section 17.46(b)(24) of the DTPA, which is listed as the second exception to the professional services exemption. TEX. BUS. & COM.CODE ANN. § 17.49(c)(2). In her response, Head claimed that Affordable and Fox failed to disclose "Blaeser's lack of

---

she was present during the inspection of the roof and attic and "watched as Mr. Fox allowed Mr. Blaeser to perform this part of the

inspection. Mr. Fox did not attempt to enter the attic space nor did he climb onto the roof."

qualifications to perform a roof and attic inspection." She also argues that Fox knew his failure to personally inspect the roof violated the standard of care. Lastly, she charges that Fox knew he failed to provide an inspection report according to the standards of his profession, but he failed to communicate this fact to her in order to induce her to accept the "Property Condition Report," which she alleges constitutes a failure to disclose information actionable under section 17.46(b)(24).

Affordable and Fox respond that this argument by Head is essentially an argument that they failed to disclose how their services were being rendered after entering into the transaction. They argue that the "transaction" in this case was the agreement that the parties entered into for the providing of the inspection services. We agree.

To prevail on a claim for failure to disclose, Head must prove four elements: (1) a failure to disclose information concerning goods or services, (2) which was known at the time of the transaction, (3) if such failure was intended to induce the consumer into a transaction, (4) which the consumer would not have entered had the information been disclosed. TEX. BUS. & COM.CODE ANN. § 17.46(b)(24) (Vernon Supp.2004–05); *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 506 (Tex. App.-San Antonio 2004, pet. filed).

■ The term "transaction" contemplates an act or acts whereby an alteration of legal rights occur. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942, 954 (Tex.App.-Amarillo 1994), *aff'd*, 907 S.W.2d 472 (Tex.1995). Therefore, according to this rationale, the transaction in this instance occurred when Head and Affordable and Fox entered into the written agreement for the inspection services, not when the report was provided to her after the inspection had been completed. *See*

*id.* at 954 (holding that grandparent's decision to allow grandchildren to go camping with boys club's volunteer worker, who sexually molested grandchildren, was not transaction under DTPA, precluding relief on DTPA claim regarding club's alleged failure to disclose volunteer's criminal conviction when grandmother called club to inquire about volunteer; rather transaction occurred when grandchildren were signed up for membership). Thus, in order to prevail, Head would have to show that Affordable and Fox intentionally withheld material information with the intent to induce her into the written agreement to inspect the house. *See Willowbrook Foods*, 147 S.W.3d at 507 (holding that nondisclosure without evidence that a defendant had knowledge of the undisclosed information and intentionally withheld the information is insufficient to establish a violation of the DTPA).

■ Head has not met this burden. Although she alleges a failure to disclose information, mere nondisclosure of material information is not enough to establish an actionable DTPA claim. *Robbins v. Capozzi*, 100 S.W.3d 18, 26 (Tex.App.-Tyler 2002, no pet.); *Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 126 (Tex.App.-Texarkana 1994, writ denied). Head did not produce any evidence that Affordable and Fox withheld information with the intent to induce her into the contract. *See Rayford v. State*, 16 S.W.3d 203, 211 (Tex.App.-Dallas 2000, pet. denied) (op. on reh'g) (holding State failed to meet its burden as a matter of law when it presented no evidence that failure to disclose information induced any consumer into a transaction she would not have entered had she known this information). We therefore hold that Head has not met her burden to produce evidence raising a genuine issue of material fact as to her failure to disclose

claim so as to avoid the professional services exemption.

## Unconscionability

■ Head next contends she raised an issue of fact under the third exception to the professional services exemption, to the effect that Affordable and Fox engaged in unconscionable conduct that took advantage of her "lack of knowledge to a grossly unfair degree." Tex. Bus. & Com.Code Ann. § 17.49(c)(3). In her response to the motion for summary judgment, Head argued that the "failure of Fox to inspect and/or report obviously defective conditions constitutes unconscionability by taking advantage of Ms. Head's lack of knowledge about residential construction to a grossly unfair degree." Likewise, she alleges on appeal that Appellees made affirmations that the inspection was "conducted by a licensed real estate inspector when it was not" and that "[a]n inspector then certified the structural integrity of a roof and attic which he didn't even personally inspect."

■ The DTPA defines an unconscionable action or course of action as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Id. § 17.45(5) (Vernon 2002). To prove an unconscionable action or course of action, Head must show that Appellees took advantage of her lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. Bradford v. Vento, 48 S.W.3d 749, 760 (Tex.2001); Bennett v. Bank United, 114 S.W.3d 75, 82 (Tex.App.-Austin 2003, no pet.). The relevant inquiry examines the entire transaction, not Appellees' intent. Chastain v. Koonce, 700 S.W.2d 579, 583 (Tex.1985); Cooper v. Lyon Fin. Servs., Inc., 65 S.W.3d 197, 207 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

Although Head makes one conclusory statement that Affordable and Fox took advantage of her to a grossly unfair degree, and although she stated in her affidavit that she relied on Fox's statements, she failed to show how her lack of knowledge was taken advantage of to a grossly unfair degree. Head was represented by an attorney while engaged in the purchase of the residence. Head contacted Affordable, after receiving a "glowing recommendation" from the realty company, to inspect the home. She was not without choice in selecting another company. See Cooper, 65 S.W.3d at 208 (holding supplier of medical laser did not engage in unconscionable conduct when, among other things, doctor contacted sales representative when he decided to purchase laser and contacted another physician who had used same laser). Furthermore, Head, or persons on her behalf, obtained four separate inspections before she purchased the residence.

After examining the record, we conclude that Head failed to produce more than a scintilla of evidence that any unfairness was "glaringly noticeable, flagrant, complete, and unmitigated." Chastain, 700 S.W.2d at 583. We therefore hold that Head failed to raise a genuine issue of material fact and that the trial court did not err in granting summary judgment on her claim of an unconscionable act.

## Breach of Express Warranty

■ Lastly, Head states that she pleaded that Affordable and Fox breached an express warranty that did not constitute advice, opinion, or judgment and that her claim therefore fit within the fourth exception to the professional services bar in the DTPA. Tex. Bus. & Com.Code Ann. § 17.49(c)(4). Appellees contend that Head failed to plead breach of express warranty as a violation of the DTPA. We disagree. Head expressly pleaded DTPA

violations by breach of both express and implied warranty in her First Amended Original Petition.[8] And, in her response to the motion for summary judgment, Head asserted that Affordable and Fox breached express warranties set forth in the inspection agreement that (1) "a licensed professional real estate inspector would perform the inspection" and (2) "that the inspection would be conducted in accordance with the standards of the Texas Real Estate Commission." In an excerpt from Fox's deposition attached to Head's response, Fox acknowledged that he would have fallen below his own standard of care by allowing Blaeser to inspect the roof unsupervised. This is some evidence that Affordable and Fox breached these warranties by delegating the attic and roof inspection to Blaeser. Additionally, expert reports attached to Head's affidavit provide some evidence that some, if not all, of the problematic conditions involving leakage and deterioration of the roof were revealed through old patches that pre-existed the inspection by Appellees and that those conditions should have been visible on the date of the inspection.

■ Generally, in order to recover for breach of an express warranty under the DTPA, a plaintiff must prove that (1) he or she is a consumer, (2) a warranty was made, (3) the warranty was breached, and (4) as a result of the breach, an injury resulted. *U.S. Tire–Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 197 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). The DTPA does not define or create any warranties. *Parkway Co.*, 901 S.W.2d at 438. Warranties actionable under the DTPA, both express and implied, must first be recognized by common law or created by statute. *Id.* Therefore, we must first determine whether an express warranty was created.

■ An express warranty is created when a seller makes an affirmation of fact or a promise to the purchaser that relates to the sale and warrants a conformity to the affirmation as promised. *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 233 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Because warranty law has developed mainly in transactions involving goods, we may look to the Texas Business and Commerce Code, which concerns express warranties and the sale of goods, for guidance. *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 575 (Tex.1991) (holding that reference to the Texas Business and Commerce Code is instructive in service transactions); *Humble Nat'l Bank*, 933 S.W.2d at 233 (holding that in determining when a fact or promise becomes part of the basis of the bargain, a court may look to section 2.313 of the Texas Business and Commerce Code, which concerns express warranties and the

---

**8.** Head also argues on appeal that Affordable and Fox did not address her common-law breach of express warranty claim in their motion for summary judgment and therefore, the trial court erred in granting summary judgment on this claim. However, Head did not plead common-law breach of express warranty, outside of the DTPA, until her "Second Amended Original Petition." The trial court specifically stated in its "Order Granting Summary Judgment" that it did not consider this pleading. Therefore, the only claim of breach of express warranty at the time of summary judgment was brought through the DTPA. Additionally, in her response to the motion for summary judgment, Head argued solely that her breach of express warranty claim fell within the exceptions to the professional services exemption under the DTPA. Therefore, although we recognize that the DTPA does not create warranties, our opinion will only address Head's breach of express warranty claim in the context of the DTPA. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex.1995) (holding that warranties actionable under the DTPA, both express and implied, must first be recognized by common law or created by statute).

sale of goods). As the supreme court recognized in *FDP*

> The UCC recognizes that breach of contract and breach of warranty are not the same cause of action. The remedies for breach of contract are set forth in section 2.711, and are available to a buyer "[w]here the seller fails to make delivery." TEX. BUS. & COM.CODE ANN. § 2.711(a). The remedies for breach of warranty, however, are set forth in section 2.714, and are available to a buyer who has finally accepted goods, but discovers that the goods are defective in some manner. TEX. BUS. & COM.CODE ANN. § 2.714, § 2.711 (Comment 1).

*FDP*, 811 S.W.2d at 576.

■ In other words, when a party fails to deliver the goods as promised, a breach of contract occurs, but when a seller delivers nonconforming goods, it is a breach of warranty. *Ellis v. Precision Engine Rebuilders Inc.*, 68 S.W.3d 894, 897 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Additionally, the Code states that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." TEX. BUS. & COM.CODE ANN. § 2.313(a)(1) (Vernon 1994). This warranty has been defined as "any representation of fact or promise as to the title, quality, or condition of existing or future goods or services." *Enterprise–Laredo Assoc. v. Hachar's Inc.*, 839 S.W.2d 822, 830 (Tex.App.-San Antonio), *writ denied*, 843 S.W.2d 476 (Tex.1992) (per curiam).

In this case, the contract between the parties provided that a "licensed real estate inspector" would conduct the inspection. This was a promise made by Affordable and Fox as to the quality of future services to be provided. Head has claimed that an apprentice inspector was allowed to inspect the roof without supervision and that Fox never personally inspected the roof. Thus, taking Head's allegations as true, although Head did receive inspection services, they arguably did not conform to the quality of the services bargained for. *See FDP*, 811 S.W.2d at 576 (holding that Southwestern Bell's failure to publish advertisement as agreed to in contract was a defect in performance; thus, there was some evidence supporting the jury's finding that this defect constituted a breach of an express warranty). Therefore, we conclude that there is a fact issue as to whether Affordable and Fox breached an express warranty that a licensed inspector would perform the inspection in conformity with industry standards; as a result, the trial court erred in applying the professional services exemption to bar Head's claim for breach of an express warranty. Because there is a fact issue as to breach of express warranty under the DTPA, summary judgment was not proper on this issue.

## BREACH OF CONTRACT AND NEGLIGENCE

■ Appellant next argues that the trial court erred in applying a contractual limitation of liability clause to her breach of contract and negligence claims. The trial court found that Affordable and Fox were liable for breach of contract and negligence. However, the trial court found that Head's damages were limited to the contract price of Affordable and Fox's services, $348.27. Head argues that the limitation of liability clause is unconscionable and against public policy.

The clause in the agreement states,

> The customer agrees and understands that the maximum liability incurred by Affordable Inspections, Inc. for errors and omissions in the inspection, including any liability, of any Inspector, Own-

er, or Employee of Affordable Inspections, Inc., if any, to the Customer shall be limited to the amount of the fee paid for the inspection, not to exceed $500.00.

■ In the absence of a controlling public policy to the contrary, contracting parties can limit their liability in damages to a specified amount. *Fox Elec. Co. v. Tone Guard Sec., Inc.,* 861 S.W.2d 79, 82–83 (Tex.App.-Fort Worth 1993, no writ). In cases examining limitation of liability clauses, the courts tend to look to the relationship of the parties and their bargaining power. *See Allright, Inc. v. Elledge,* 515 S.W.2d 266, 267 (Tex.1974) (declaring that in determining whether a contractual agreement limiting liability is against public policy, the court looks to the relationship between the parties); *Arthur's Garage, Inc. v. Racal–Chubb Sec. Sys., Inc.,* 997 S.W.2d 803, 810 (Tex.App.-Dallas 1999, no pet.) (holding that an agreement to limit liability will not violate public policy if there is no disparity of bargaining power between the parties); *D. Calarco v. Southwestern Bell Tel. Co.,* 725 S.W.2d 304, 307 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.) (recognizing that in determining whether a liability limitation provision is against public policy, the courts must look to the relationship of the parties), *overruled on other grounds by Houston Lighting & Power Co. v. Auchan USA, Inc.,* 995 S.W.2d 668 (Tex.1999).

■ When deciding whether a contractual provision is unconscionable, a court must consider the entire atmosphere in which the agreement was made. *Am. Employers' Ins. Co. v. Aiken,* 942 S.W.2d 156, 160 (Tex.App.-Fort Worth 1997, no writ). The court must look at the bargaining process the parties went through and must evaluate the fairness of a contractual provision in controversy by determining whether there are legitimate commercial

reasons that justify its inclusion as part of the agreement. *Id.*

In the present case, the limitation of liability clause was conspicuously set apart in the Inspection Agreement, enclosed in a box, and separately initialed by Head. Further, Affordable was not the only home inspection service available to Head. If she was unsatisfied with the limitation of liability provision, she was free to choose another inspection service. She was not limited to the contract provided to her by Affordable and Fox. *See D. Calarco,* 725 S.W.2d at 307 (finding no disparity of bargaining power existed when the evidence showed that Southwestern Bell Telephone was not the only provider of directory advertising). Furthermore, Head was represented by a board certified real estate attorney who worked with the listing agent on the house during the purchase. Head also obtained other inspections on the house during this time. Based on these facts, we hold that there was no disparity in bargaining power in this case.

There are also legitimate commercial reasons for allowing Affordable and Fox to limit their liability. In finding policy reasons for upholding such clauses, courts examining them in the context of burglar and fire alarm systems have noted that in those situations, the customer pays a small fee, and prohibiting the limitation of liability could expose an alarm company to significant risks that could vary widely depending on the contents of a building. *See Racal–Chubb,* 997 S.W.2d at 810–11 (discussing the policy reasons for upholding the use of liability limitation clauses); *Vallance & Co. v. DeAnda,* 595 S.W.2d 587, 590 (Tex.Civ.App.-San Antonio 1980, no pet.) (concluding that it would be unreasonable to expect an alarm company to assume the responsibilities of a burglary insurance policy upon the payment of a minimal fee). The situation here is analo-

gous. Head paid a small fee for a visual inspection of her home, and prohibiting Affordable from limiting liability could subject it to a significant risk of liability. Furthermore, without the ability to limit liability, the costs of home inspection services would likely increase, which might make this service unaffordable for some. *See Racal–Chubb,* 997 S.W.2d at 811 (listing the potential for increased cost of alarm services as one policy reason for limiting liability). Therefore, the policy reasons in favor of limiting liability in the alarm context apply equally as well in this situation. Thus, we hold that the limitation of liability clause in the Inspection Agreement is not unconscionable. We therefore overrule Appellant's argument that the trial court erred in applying the limitation of liability clause.

## ATTORNEYS' FEES

■ In her next issue, Head challenges the award of attorneys' fees in favor of Appellees. In its order granting summary judgment, the trial court awarded attorneys' fees against Head in the amount of $25,861.58 together with interest thereon at the rate of ten percent per annum. Appellees argue that the award of attorneys' fees was proper under the Inspection Agreement, which provides that the "Customer agrees to pay all legal expenses ... as a result of any legal action by the Customer where the Customer does not prevail."

Head argues that the contractual term "does not prevail" is ambiguous and must be strictly construed against Appellees. She contends that she did prevail on her breach of contract and negligence claims, even though her recovery was limited to the amount of the contract. Appellees contend that Head did not "prevail" because she did not obtain substantial damages or recision of the transaction.

■ Parties to a contract may provide by agreement that the prevailing party is entitled to recover attorneys' fees. *G. Richard Goins Constr. Co. v. S.B. McLaughlin Assocs., Inc.,* 930 S.W.2d 124, 130 (Tex.App.-Tyler 1996, writ denied). A prevailing party has been defined as the party "who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention." *Flagship Hotel, Ltd. v. City of Galveston,* 117 S.W.3d 552, 564 (Tex.App.-Texarkana 2003, pet. denied); *City of Amarillo v. Glick,* 991 S.W.2d 14, 17 (Tex.App.-Amarillo 1997, pet. denied). Determination of whether a party is the prevailing or successful party must be based upon success on the merits, and not on whether or not damages were awarded. *Glick,* 991 S.W.2d at 17; *see also Robbins,* 100 S.W.3d at 27. In other words, the prevailing party is the one who is vindicated by the trial court's judgment. *Glick,* 991 S.W.2d at 17.

Because we reverse the summary judgment as to Head's breach of express warranty claim, we hold that neither party has prevailed at this point. Therefore, we reverse the award of attorneys' fees in favor of Appellees.

## CONCLUSION

We affirm the trial court's summary judgment as to Head's DTPA claims based upon misrepresentation, failure to disclose, and unconscionability, as well as on her negligence and breach of contract causes of action. We reverse the summary judgment as to Head's claim for breach of express warranty as a violation of the DTPA, and remand that portion of the case to the trial court. Because we reverse as to Head's claim for breach of express warranty under the DTPA, we likewise reverse the award of attorneys'

fees in favor of Affordable and Fox, and remand both claims to the trial court for further proceedings in accordance with this opinion.