# United States Court of Appeals for the Fifth Circuit

———————

No. 23-40244

———————

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2024

Lyle W. Cayce
Clerk

GLORIA FRIC, *Individually and as Administrator of* THE ESTATE OF DAVID FRIC, *Deceased*,

*Plaintiff—Appellant*,

*versus*

ALLSTATE LIFE INSURANCE COMPANY,

*Defendant—Appellee*.

———————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:21-CV-42

———————————————

Before KING, JONES, and OLDHAM, *Circuit Judges*.

PER CURIAM:[*]

Plaintiff–Appellant Gloria Fric was the primary beneficiary of a universal life insurance policy insuring the life of her husband. Following her husband's death in 2020, Mrs. Fric learned that the policy had lapsed ten months earlier for failure to pay premiums. She sued Defendant–Appellee

———————————————

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

1

Allstate Life Insurance Company, alleging that Allstate was required under the terms of an autopay agreement to withdraw premiums necessary to keep the policy in force. The district court disagreed with Mrs. Fric's interpretation of the agreement and granted summary judgment in favor of Allstate. We AFFIRM.

## I. Background

In 1987, David and Gloria Fric purchased a universal life insurance policy with a face value of $200,000 insuring the life of Mr. Fric. Mrs. Fric was the primary beneficiary. Because the cost of insurance under the policy increased as Mr. Fric aged, the premium necessary to keep the policy in force also increased. In 2017, the Frics signed an autopay agreement that authorized Allstate to withdraw a premium of $436.75 per month. This agreement—the Electronic Fund Transfer Agreement, or EFTA—also authorized Allstate to make changes to the premium amount upon "written, verbal, or electronic request(s)" by the Frics. In addition, the EFTA authorized the Frics' insurance agent to make changes to the premium amount on behalf of the Frics, with any request for changes to "be confirmed by [Allstate] in writing." Finally, the EFTA stated that "[e]lectronic debit entries shall be initiated by [Allstate] to pay premiums . . . as authorized."

From August 2017 to October 2019, Allstate automatically withdrew Mr. Fric's $436.75 monthly payment as authorized under the EFTA. By October 2019, however, the $436.75 payment was no longer sufficient to keep the policy in force. Allstate accordingly mailed Mr. Fric a letter advising him that the policy had entered a sixty-day grace period on account of insufficient funds and that a payment of $1,064.59 was necessary to prevent the policy from lapsing. The Frics never made the required payment. In December 2019, Allstate mailed Mr. Fric a letter informing him that the policy had

lapsed and also provided a reinstatement application. The Frics did not respond or seek reinstatement.

Mrs. Fric says that she "do[es] not recall seeing" either letter from Allstate, although she offers no evidence that the letters were not mailed. She also says that, after executing the EFTA, she and her husband "fully expected that Allstate would automatically withdraw all the money necessary to keep the policy in effect."

Mr. Fric passed away in October 2020, and Mrs. Fric promptly made a claim on the policy. Allstate rejected her claim, informing her that the policy had lapsed ten months earlier. Mrs. Fric then sued in state court, bringing claims for (1) breach of contract, (2) bad faith under Texas statutory and common law, and (3) fraud and promissory estoppel. Allstate removed to federal court, where the parties filed cross-motions for summary judgment. The district court denied Mrs. Fric's motion and granted Allstate's.

## II. Discussion

The district court did not err in granting summary judgment in favor of Allstate on all three categories of claims. This court reviews a district court's grant of summary judgment *de novo*. *Arctic Slope Reg'l Corp. v. Affiliated FM Ins.*, 564 F.3d 707, 709 (5th Cir. 2009).

Beginning with the breach of contract claim, the EFTA, at most, required Allstate to withdraw $436.75 per month, which Allstate did do until the policy entered the grace period in October 2019. Under Section C of the EFTA, the Frics "authorize[d]" Allstate "to deduct payments from" their bank account and designated a "payment amount" of $436.75, to be paid "monthly." Section C also indicated that Allstate could change the premium amount, but only upon "written, verbal or electronic request(s)" by the Frics, who never submitted such a request. To be sure, the Frics also

"authoriz[ed]" their agent, in Section D, to make changes to the premium amount on their behalf. But no language in that section or elsewhere in the EFTA *required* the agent to make such changes. Nor did Section D grant Allstate, the defendant in this action, the authority to make changes on the Frics' behalf; any request for change that the agent made on the Frics' behalf was to be "confirmed by [Allstate] in writing."

Mrs. Fric's primary argument that Allstate was required to automatically withdraw premiums sufficient to keep the policy in force is based on Section E of the EFTA. Section E states, with emphasis added, that "[e]lectronic debit entries *shall be* initiated by [Allstate] to pay premiums and other charges and fees for or associated with the policy listed on this document or other policies *as authorized*." Mrs. Fric is right that, by using the word "shall," Section E imposed an obligation on Allstate to withdraw premiums. But it imposed this obligation only to the extent "authorized." And the Frics authorized Allstate to withdraw only $436.75 per month, without ever having requested that the premium amount be increased. Allstate thus did not breach the EFTA by failing to withdraw more than the $436.75 monthly payment.

In addition to the breach of contract claim, Mrs. Fric brought several extracontractual bad-faith claims, alleging that Allstate violated the Texas Deceptive Trade Practices Act, the Texas Insurance Code, and the common law duty of good faith and fair dealing. All of these claims are based on allegedly false or misleading representations contained in the EFTA.

Because we determined above that the EFTA imposed no obligation on Allstate to withdraw premiums sufficient to keep the policy in force, Mrs. Fric's extracontractual bad-faith claims must fail. The holding on the breach of contract claim indicates that Allstate did not make the alleged false or misleading representations on which Mrs. Fric's bad-faith claims are

based. *See Nexion Health at Omaha, Inc. v. Martin*, No. 06-10-00017-CV, 2010 WL 2690562, at *4 (Tex. App.—Texarkana July 7, 2010, no pet.) (determining that unambiguous contractual provision was "neither misleading nor a material misrepresentation"); *cf. Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 743 (Tex. App.—Fort Worth 2005, no pet.) (concluding that claim under the DTPA "founded solely on the [plaintiff's] breach of contract allegations [was] not actionable as a claim of misrepresentations under the DTPA"). Apart from vaguely invoking Allstate's "course of conduct," Mrs. Fric makes no claim that Allstate made a false or misleading representation outside of the EFTA. This case is thus unlike two cases Mrs. Fric cites in her opening and reply briefs. In one, the defendant insurance company had a "practice of sending a notice of premium due letter for over twenty years . . . and then suddenly ceas[ed] the practice," resulting in a lapse. *Cumpian v. Great-West Life & Annuity Ins.*, No. SA-10-CA-366-FB, 2010 WL 11601551, at *4, 6 (W.D. Tex. July 6, 2010) (concluding that the plaintiff plausibly pleaded that the insurance company's "wrongful repudiation" of its twenty-year practice amounted to a "misrepresentation"). In another, an insurance agent falsely represented that the grace period for paying a policy premium would be extended. *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 607 (Tex. App.—San Antonio 1996, no writ). No such misrepresentations occurred here.[1]

Mrs. Fric also brought claims for fraud and promissory estoppel. In her reply brief, she abandons her claim for fraud by misrepresentation and her claim for promissory estoppel, deeming each "unnecessary or duplicative

---

[1] The parties dedicate much of their briefing to disputing the application of *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018), which clarified Texas case law on when insureds can recover damages on extracontractual bad-faith claims. Because our holding above is sufficient to dispose of these claims, we decline to consider how exactly *Menchaca* applies in this case.

given [Allstate's] apparent concession that the EFTA was an in-force contract," which Allstate had contested below.  Mrs. Fric nonetheless attempts to preserve a claim for fraud by nondisclosure.  As Allstate argues, however, Mrs. Fric never pleaded such a claim.  This claim is, therefore, not appropriately before the court. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

The judgment of the district court is AFFIRMED.

No. 23-40244

ANDREW S. OLDHAM, *Circuit Judge*, dissenting.

With deepest respect for my learned colleagues, I would reverse the district court's grant of summary judgment on Mrs. Fric's breach of contract claim.

Under Texas law, we give insurance contracts their plain meaning, considering the instrument as a whole. *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008) ("[W]e must give the policy's words their plain meaning." (citation omitted)); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) ("We must read all parts of the contract together." (citation omitted)). Here, the Electronic Funds Transfer Agreement ("EFTA") obligated Allstate to withdraw sufficient funds to keep the Frics' account open. Three components of the EFTA work together to create this obligation.

First, the very first line of the EFTA reads: "I (We) authorize . . . Allstate Life Insurance Company . . . to debit my (our) account indicated to pay the premiums/payments, *and other charges (such as non-sufficient funds)*, from the account listed on this form."

Second, in Section D of the EFTA, the Frics authorized their insurance agent to make any necessary changes to the "premium amount . . . on [their] behalf." What purpose would these authorizations serve, if not to ensure the Frics paid the required amount for coverage, even when that amount varied from the recurring payment? If Allstate were in fact obligated only to withdraw the specified recurring payment, as the insurance company contends, there would be no reason to authorize "other charges" payments or agent-directed changes to premium amounts. Those authorizations would be meaningless, requiring the Frics to initiate the payments and changes themselves, despite the EFTA.

7

No. 23-40244

Third, Section E of the EFTA provides: "Electronic debit entries *shall* be initiated by The Company to pay *premiums and other charges and fees* for or associated with the policy listed on this document or other policies *as authorized*." The most natural reading of that provision requires Allstate to debit any charges for the life insurance account listed, as authorized by the two other sections mentioned above.

At a minimum, the EFTA is ambiguous. Under Texas law, ambiguous contracts survive summary judgment. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." (citation omitted)). So even if the EFTA could be read as the majority reads it, it could also be read the way I (and Mrs. Fric) read it. So I would reverse and send the case to trial.