COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-07-228-CV

TEXAS SPECIALTY TRAILERS, INC.;                    APPELLANTS
J. MARVIN WILLIAMS, JR.;
AND RICHARD KELLERMAN
D/B/A JK TRUCKING

V.

JACKSON & SIMMEN DRILLING                           APPELLEES
COMPANY AND LEXINGTON
INSURANCE COMPANY

------------

FROM THE 271ST DISTRICT COURT OF JACK COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In eight issues, appellants Texas Specialty Trailers, Inc., J. Marvin

Williams, Jr., and Richard Kellerman d/b/a JK Trucking appeal a judgment

rendered on a jury verdict awarding appellee Jackson & Simmen Drilling

---

[1] *See* Tex. R. App. P. 47.4.

Company approximately $3.2 million in damages. We affirm in part, reverse and render in part, and reverse and remand in part.

## I. Background

In September 2005, Jackson & Simmen Drilling Company (J&S) owned a drilling rig that was stored in Palo Pinto County. Because J&S had a contract with an oil company to drill wells in Comanche County, J&S needed to transport the rig to that county. J&S contacted companies that had hauled its rig in the past, but none were available to haul the rig to Comanche County. At the suggestion of one of the companies, Jerry Jackson, a J&S principal, contacted Williams, a shareholder and manager for Texas Specialty Trailers, Inc. (Texas Specialty), about hauling the rig. After inspecting the rig, Williams telephoned Jackson to inform him that Texas Specialty "could move" it and offered to do the job for $7,000. Jackson accepted Texas Specialty's offer. Thereafter, Texas Specialty contracted with an independent contractor, Richard Kellerman d/b/a JK Trucking (Kellerman), to drive the truck pulling the trailer on which the rig was to be loaded.

On September 22, 2005, Williams and Kellerman met with J&S employees in Palo Pinto County to load the rig. While the rig was being loaded, Williams and Kellerman determined that it would not sit safely on the trailer because the rig was too wide for the trailer: when being positioned atop the

2

trailer, the rig's wheels would contact the trailer's wheels. Someone from J&S then offered Williams and Kellerman the use of pipe grates as a platform for the rig's tires so that they would not come into contact with the trailer. Williams and Kellerman agreed to do this, and the rig was loaded using the pipe grates. Williams then chained the rig to secure it to the trailer. Kellerman inspected the load and satisfied himself that it was safe before driving out.

Kellerman departed for Comanche County. Just outside of Strawn, in Palo Pinto County, Texas, however, the trailer carrying the rig separated from the vehicle hauling it. The rig rolled off the trailer and into a ditch where it fell on its side. The rig was damaged. As a result, J&S was not able to drill the wells in Comanche County.

J&S sued Texas Specialty, Williams, and Kellerman in Jack County for negligence, breach of contract, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA).[2] After a trial, the jury found Texas Specialty, Williams, and Kellerman liable for negligence and found that Texas Specialty and Williams violated the DTPA. The proportionate responsibility of J&S and Jackson was not submitted to the jury.

---

[2] Tex. Bus. & Com. Code Ann. §§ 17.41–.63 (Vernon 2002 & Supp. 2008).

Based on their negligence and DTPA-violation findings, the jury awarded J&S $750,000 in repair or replacement damages, $2,475,000 in lost profits, and $29,800 in other damages. The trial court rendered judgment on the verdict, awarding damages divided between Texas Specialty, Williams, and Kellerman based on their percentages of responsibility as determined by the jury. The judgment also awarded J&S prejudgment interest and $333,750 in attorneys' fees. This appeal followed.

## II.    Issues

In eight issues, appellants complain on appeal that (1) the trial court erred in denying the motion to transfer venue filed jointly by Texas Specialty and Kellerman, (2) the evidence was insufficient to support the jury's verdict on J&S's negligence and DTPA claims, (3) Williams should not be individually liable for negligence, (4) the trial court erroneously refused to submit the proportionate responsibility of J&S and Jackson to the jury, and (5) the trial court erred in awarding prejudgment interest on damages to repair or replace the rig and on lost profits.

We must address the sufficiency of the evidence issues and Williams's individual liability before determining the other issues.[3]

_____

[3] *See Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (holding that courts of appeals must consider issues that may

4

### III. Sufficiency of the Evidence

**A. Standard of Review**

We may sustain a legal sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.[4]  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.[5]

Anything more than a scintilla of evidence is legally sufficient to support the finding.[6]  When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the

result in rendition before considering issues that could result only in remand).

[4] *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999).

[5] *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

[6] *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996).

evidence is no more than a scintilla and, in legal effect, is no evidence.[7] More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.[8]

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered.[9]

## B. Negligence

In their seventh issue, appellants assert that the evidence is legally and factually insufficient to show that their failure to properly load, secure, and chain the rig proximately caused damage to the rig because J&S failed to present evidence of the amount of deceleration force exerted on the rig during

---

[7] *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

[8] *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

[9] *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

the accident.  According to appellants, without evidence quantifying the force of deceleration, there is no evidence of cause-in-fact because the force of deceleration may have been so great that the rig would have left the trailer even if the rig had been properly loaded and secured.

Proximate cause, as an element of a negligence claim, entails both cause-in-fact and foreseeability.[10]  The test for cause-in-fact, or "but for" causation, is whether the negligent act or omission was a substantial factor in bringing about the injury and whether the injury would have occurred without the act or omission.[11]  Although cause-in-fact can be established by circumstantial evidence, it cannot be established by mere conjecture, guess, or speculation.[12]

At trial, Williams agreed that Texas Specialty is responsible and would "take responsibility" for the damage to the rig.  In addition, Anita Kerezman, a vehicle operations and safety specialist, testified that Texas Specialty and Kellerman caused damage to the rig by failing to properly secure the rig, to block the rig as federal and state regulations required, and to load the rig so as to properly distribute its weight across the trailer.  Kerezman further opined

---

[10] *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995).

[11] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004).

[12] *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002).

that, had the load been properly secured and blocked, the rig would not have rolled off the trailer regardless of any other equipment failures. When questioned about the alleged failure of the pipe grates that were used to support the rig above the trailer's wheels, Kerezman testified that this "doesn't matter" with respect to the accident's causation because "if the load is properly secured and blocked, even if there is a failure in some part of the load, it's not going to compromise the integrity of the entire load and we don't lose this rig."

Kerezman testified that, under applicable federal regulations, appellants were required to use cargo securement devices and systems capable of withstanding a 0.8g deceleration in the forward direction.[13] She conferred with a mechanical engineer/accident reconstructionist and, after examining photographs and the materials, concluded that the accident produced no mechanism operating on the load that could have exceeded 0.8g in forward deceleration. Therefore, according to Kerezman, had appellants complied with regulations and properly secured and blocked the load, the chains would have held and the rig would not have left the trailer.

---

[13] *See* 49 C.F.R. § 393.102(a) (2008). 0.8g signifies the force exerted by eighty percent of the weight of the load.

8

We hold that Kerezman's testimony constitutes both legally and factually sufficient evidence to support a finding of proximate cause.[14] Accordingly, we overrule appellants' seventh issue.

## C.    DTPA

In their second issue, appellants assert that the evidence is legally and factually insufficient to support the jury's findings on J&S's DTPA claims,[15] based in part on the testimony by Jackson that Williams made two separate statements:  (1) that Texas Specialty "could move" the rig; and (2) that the rig "would ride."  Appellants argue that both of Williams's statements were merely statements of the parties' contract and, therefore, not deceptive acts.  They further contend that the statement that the rig "would ride" is merely an expression of opinion.

---

[14] Appellants challenge Kerezman's qualifications, as well as the reliability of her testimony, contending that it is "bare opinion without any foundation or expertise."  None of these objections, however, were raised at trial.  They are, therefore, waived. *See* Tex. R. App. P. 33.1; *see also City of San Antonio v. Pollock*, 284 S.W.3d 809, 816–17 (Tex. 2009).

[15] The court submitted three separate DTPA violations to the jury: "[r]epresenting that services had or would have characteristics that they did not have"; "[r]epresenting that services are or will be of a particular quality if they were of another"; and "[r]epresenting that an agreement confers or involves rights that it did not have or involve."  *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(5), (7), (12).  The jury found that Texas Specialty and Williams committed all three violations.

9

The mere failure to perform a term of a contract is not a DTPA violation.[16] To distinguish between deceptive acts and a breach of contract, courts analyze whether there was some representation made "outside the contract."[17] If a defendant's representation was only that its performance would be of a certain quality, it is not a DTPA violation and breach of contract would be the only action available.[18] Whether the facts, once ascertained, constitute a misrepresentation under the DTPA is a question of law.[19]

Williams's statement that Texas Specialty "could move" the rig was not merely a statement of its contract with J&S. It was not a representation that Texas Specialty would fulfill its contractual obligation to haul the rig or that its performance in hauling the rig would be of a certain quality. Rather, the statement was a representation that Texas Specialty had the expertise and

---

[16] *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13–15 (Tex. 1996); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 742–43 (Tex. App.—Fort Worth 2005, no pet.).

[17] *See Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 389–90 (Tex. App.—Texarkana 2003, pet. denied).

[18] *See Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568, 577 (Tex. App.—Texarkana 1997, no writ).

[19] *Head*, 159 S.W.3d at 743.

ability to move the rig, which the evidence shows was false,[20] that was made *prior to* the formation of J&S's contract with Texas Specialty. As a matter of law, the statement that Texas Specialty "could move" the rig was, therefore, outside the parties' contract and a deceptive act.[21]

Appellants argue that J&S no longer could rely to its detriment upon Williams's statement after Williams subsequently stated "we cannot haul it" while attempting to load the rig. However, the record shows this statement was made in reference to a lack of available equipment on hand, not to Texas Specialty's ability to move the rig as it had represented. After Williams made the statement, he and Kellerman loaded the rig with the use of borrowed pipe

---

[20] At the time Williams made the representation that Texas Specialty "could move" the rig, the record shows Texas Specialty's primary business was not hauling large equipment or drilling rigs but buying and selling trailers. Instead of apprising J&S of this fact, Texas Specialty examined the rig, measured it, and represented that it had the equipment and expertise to move the rig. The record, however, demonstrates that Texas Specialty did not accurately measure the rig, did not have adequate equipment, and could not load and move the rig because it lacked the required experience and equipment to do so safely.

[21] *See, e.g.*, *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671–72 (Tex. 1990) (holding that misrepresentation that the purchaser of a motorcycle dealership would "be able to buy parts and vehicles as [the former owner] had been buying" was actionable under DTPA section 17.46(b)(12) when the "dealership" conveyance did not in fact include the ability to purchase more vehicles from the motorcycle manufacturer).

11

grates as a type of platform for the rig's wheels and attempted to haul it to Comanche County, as agreed.

Because the evidence is sufficient to support the jury's DTPA finding that the misrepresentation that Texas Specialty "could move" the rig was a deceptive act, we overrule appellants' second issue.[22]

## IV.  Williams's Individual Liability for Negligence

In their sixth issue, appellants assert that Williams cannot be personally liable for negligence because he had no duty in his individual capacity to J&S. The existence of a duty is a question of law.[23]  "A corporate officer or agent can be liable to others . . . for his or her own negligence.  However, individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party *apart from the employer's duty*."[24]

J&S concedes that "the individuals participating in loading and securing the rig" owed no duty to J&S.  Moreover, J&S does not contest that Williams's acts relating to the loading and hauling of the rig were done in his capacity as

---

[22] Because the "could move" statement alone will support the DTPA verdict, we need not reach the parties' arguments concerning whether Williams's statement that the rig "would ride" would support those findings. *See* Tex. R. App. P. 47.1.

[23] *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005).

[24] *Leitch*, 935 S.W.2d at 117 (emphasis added).

12

a corporate officer or that he was performing duties belonging to Texas Specialty. Accordingly, we conclude that Williams owed no duty and cannot be personally liable for negligence.[25] We sustain appellants' sixth issue.[26]

Having considered all of appellants' rendition points, we now turn to the venue, proportionate responsibility, and prejudgment interest issues.

## V.    Venue

In their first issue, appellants contend that the trial court erred in denying Texas Specialty and Kellerman's motion to transfer venue.

## A.    Standard of Review

A plaintiff is accorded the right to choose venue; as long as suit is initially filed in a county of proper venue (i.e., the county is at least a permissive venue and no mandatory provision applies), the plaintiff's venue choice cannot be disturbed.[27]   If the dispute is between two counties of permissive venue,

---

[25] *See id.*

[26] Appellees point out that in response to special question number two, the jury found Williams personally liable under the DTPA. *See Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002). This finding is not challenged by appellants, except as to a sufficiency challenge which we have overruled. Consequently, although we sustain appellants' sixth issue, it results in no change in the judgment because Williams is individually liable for the judgment, as a result of the jury's DTPA findings.

[27] *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 261 (Tex. 1994).

transferring the case is improper.[28] A plaintiff's choice of venue stands unless challenged by a proper motion to transfer venue.[29] Once challenged, the plaintiff has the burden to present prima facie proof that venue is maintainable in the county of suit.[30] The action must remain in the county of suit if the plaintiff selected a county of proper venue and supported the selection with prima facie proof supporting venue there.[31]

In reviewing a venue decision, the appellate court must conduct an independent review of the entire record, including, where applicable, the trial on the merits, to determine whether any probative evidence supports the trial court's venue decision.[32] Courts review the evidentiary record in the light most favorable to the venue ruling; however, no deference is given to the trial court's application of the law.[33] An appellate court cannot review the sufficiency of

---

[28] *Id.* at 262.

[29] *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999).

[30] Tex. R. Civ. P. 87(2)(a), (3)(a); *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999).

[31] *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d at 261.

[32] Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (Vernon 2002); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex. 1993).

[33] *Ruiz*, 868 S.W.2d at 758.

the evidence supporting the plaintiff's venue choice.[34] If there is any probative evidence supporting venue in the county of suit, a transfer should be denied even if the evidence preponderates to the contrary.[35] However, conclusive evidence to the contrary can destroy the "probative evidence."[36]

"[A]n appellate court must reverse (there cannot be harmless error) if other evidence in the record, even evidence adduced after venue was determined, destroys the prima facie proof on which the trial court relied."[37] Appellate review of the entire record, as required by statute,[38] thus "preserves the plaintiff's right to select and maintain suit in a county of proper venue, and it protects the defendant from fraud or inaccuracy at the pleading stage."[39]

---

[34] *Id.*

[35] *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex. 1995); *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d at 262.

[36] *Ruiz,* 868 S.W.2d at 757; *Rosales v. H.E. Butt Grocery Co.,* 905 S.W.2d 745, 750 (Tex. App.—San Antonio 1995, writ denied).

[37] *Ruiz*, 868 S.W.2d at 757.

[38] Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b).

[39] *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448, 459 (Tex. App.—El Paso 2006, no pet.) (citing *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d at 262).

15

## B.    Governing Venue Statute

J&S asserts that venue is proper in Jack County under two permissive venue statutes:  (1) the general venue rule contained in Texas Civil Practice and Remedies Code section 15.002(a)(1), which provides that venue is proper in the county where "all or a substantial part of the events or omissions giving rise to the claim occurred";[40] and (2) the DTPA's venue provision, which provides that venue is proper in any "county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar."[41]

Addressing the general venue rule under section 15.002(a)(1), to determine whether a "substantial part" of the events giving rise to a claim occurred in the chosen venue, courts examine the record in light of the claim's essential elements.[42]  Thus, a DTPA plaintiff is required to establish for venue

---

[40] Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1).

[41] Tex. Bus. & Com. Code Ann. § 17.56(2).

[42] *See Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 680–82 (Tex. App.—Austin 2003, no pet.) (examining the essential elements of the claim when determining where a substantial part of events or omissions occurred giving rise to plaintiff's declaratory-judgment action regarding insurer's duty to defend); *see also KW Constr. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 882–83 (Tex. App.—Texarkana 2005, pet. denied) (determining "substantial part" venue in a breach of contract action in county where events or omissions occurred relating to two of the claim's four essential elements).

purposes the following elements: (1) the plaintiff is a consumer; (2) the defendant committed an action or omission listed as a violation under DTPA section 17.46(b); (3) the plaintiff detrimentally relied upon the wrongful action or omission; and (4) the wrongful action or omission was a producing cause of the plaintiff's damages.[43]

## C. Evidence Supports Venue in Jack County

The evidence in this case shows that Jackson was in Jack County during the telephone conversation in which Williams made the misrepresentation that Texas Specialty "could move" the rig and that Jackson, on behalf of J&S, indeed entered into the contract with Texas Specialty while in Jack County. Texas Specialty contends, however, that Williams's representation is not actionable under the DTPA, and that, even if it is, the facts surrounding it are not sufficient to meet the substantiality requirement.

We have already held that Williams's misrepresentation that Texas Specialty "could move" the rig is an actionable DTPA violation.[44] Thus, to determine whether venue is proper in Jack County, we must determine whether

---

[43] Tex. Bus. & Com. Code Ann. §§ 17.46, 17.50(a); *see also Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 (Tex. 2002); *Gill v. Boyd Distribution Ctr.*, 64 S.W.3d 601, 604 (Tex. App.—Texarkana 2001, pet. denied). The parties do not dispute that J&S is a consumer under the DTPA.

[44] The jury found Texas Specialty and Williams violated DTPA section 17.46(b)(5), (7), and (12).

17

the facts surrounding that actionable misrepresentation satisfy section 15.002(a)(1)'s substantiality requirement.[45] In so doing, we are mindful that our task is not to determine the best venue, but to determine whether any probative evidence supports the trial court's venue determination under section 15.002(a)(1).[46]

In making venue determinations, Texas courts have held that the receipt of telephone calls and letters in a particular county are facts that weigh in favor of finding venue to be appropriate in that county.[47] Here, it is undisputed that Jack County is where Jackson received the telephone call in which Williams told him that Texas Specialty "could move" the rig. Jackson also testified that he relied upon this representation, and it is undisputed that Jack County is where Jackson acted by placing the telephone call in which he accepted Texas

---

[45] *See Chiriboga,* 96 S.W.3d at 681.

[46] *Id.*

[47] *See Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (noting venue would be proper based on threatening and harassing telephone calls and letters sent to defendant in the county of venue); *see also Moveforfree.com Inc. v. David Hetrick, Inc.*, No. 14-07-00044-CV, 2009 WL 1416069, at *3 (Tex. App.—Houston [14th Dist.] May 21, 2009, no pet.) (finding venue under section 15.002(a)(1) in the county in which misrepresentations were received and partial performance of the contract was required); *Siemens Corp. v. Bartek*, No. 03-04-00613-CV, 2006 WL 1126219, at *6–7 (Tex. App.—Austin Apr. 28, 2006, no pet.) (mem. op.) (same).

Specialty's offer to move the rig. Viewing these facts in light of the entire record, we conclude that they constitute probative evidence that a substantial part of J&S's DTPA claim occurred in Jack County. We overrule appellants' first issue.[48]

## VI.   Proportionate Responsibility

In their third, fourth, and fifth issues, appellants assert that the trial court erred in failing to find J&S and Jackson to be responsible parties and, therefore, deprived appellants of the right to submit their proportionate responsibility to the jury.[49]

We review alleged error in the jury charge for abuse of discretion, which occurs only when the trial court acts arbitrarily, unreasonably, or without reference to guiding rules or principles.[50] If an issue is properly pleaded and is

---

[48] Because we hold that the evidence supports venue in Jack County under section 15.002(a)'s "substantial part" provision based on the actionable misrepresentation that Texas Specialty "could move" the rig, we do not reach application of the DTPA's section 17.56(2) venue provision. *See* Tex. R. App. P. 47.1.

[49] Appellants complain that the trial court erred (1) in granting J&S's traditional and no-evidence partial summary judgment motion on Texas Specialty's proportionate responsibility defense, (2) in granting Jackson's traditional and no-evidence partial summary judgment and motion to strike the designation of Jackson as a responsible third party, and (3) in failing to submit the issue of J&S's and Jackson's proportionate responsibility to the jury.

[50] *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 837 (Tex. App.—Fort Worth 2008, no pet.) (citing *In re V.L.K.*,

19

supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury.[51]

## A.    Texas Civil Practice and Remedies Code Chapter 33

The proportionate responsibility provisions of civil practice and remedies code Chapter 33 apply to "any cause of action based on tort" and to "any action brought under the [DTPA]" "in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought."[52]

Under Chapter 33, submission of a comparative fault question regarding the conduct of any person is not allowed "without sufficient evidence to support the submission."[53]    Because comparative responsibility involves measuring the parties' comparative fault in causing the plaintiff's injuries, it requires a preliminary finding that the plaintiff was in fact contributorily negligent.[54]

---

24 S.W.3d 338, 341 (Tex. 2000)).

[51] *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex. 1995); *see also* Tex. R. Civ. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992) ("A trial court may refuse to submit an issue only if no evidence exists to warrant its submission.").

[52] Tex. Civ. Prac. & Rem. Code Ann. § 33.002(a)(1), (2) (Vernon 2008).

[53] Tex. Civ. Prac. & Rem. Code Ann. § 33.003(b).

[54] *Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex. 2000); *see Moore v. Kitsmiller*, 201 S.W.3d 147, 151 (Tex. App.—Tyler 2006, pet. denied).

Contributory negligence contemplates an injured person's failure to use ordinary care in regard to his or her own safety[55] and requires proof that the plaintiff was negligent and that this negligence was the proximate cause of his or her injuries.[56]  The standards and tests for determining contributory negligence are the same as those for determining negligence, and the same rules of law apply to both.[57]

## B.    Duty to Safely Load and Secure the Rig

To bring a negligence action in Texas, a plaintiff must present evidence establishing a legal duty, breach of that duty, and damages proximately caused by the breach.[58] The existence of a legal duty is a question of law for the court to decide, determined from the facts surrounding the occurrence in question.[59]

---

[55] *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 520 (Tex. 1978).

[56] *Keng*, 23 S.W.3d at 351; *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex. 1988).

[57] *Moore*, 201 S.W.3d at 151.

[58] *Nabors Drilling, U.S.A., Inc. v. Escoto*, 52 Tex. Sup. Ct. J. 885, 886, 2009 WL 1712797, at *2 (Tex. June 19, 2009); *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).

[59] *Tri*, 162 S.W.3d at 563; *see also Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991) (reviewing judgment notwithstanding the verdict and recognizing that "[t]he existence of a legal duty is a question of law for the court although in some instances it may require the resolution of disputed facts or inferences which are inappropriate for legal resolution").

Liability cannot be imposed if no duty exists.[60] Moreover, when a duty exists, to have a question submitted to the jury, the evidence must raise a material fact issue.[61]

J&S and Jackson contend, among other arguments, that, even if they participated in the loading process, they are not responsible parties and that the trial court was correct in refusing to submit issues to the jury regarding their responsibility for damage to the rig because Texas Specialty and Kellerman had non-delegable duties under federal and state law to load and secure the rig safely.

### 1.    General Rule of Carrier Liability

It is undisputed that Texas Specialty and Kellerman were subject to federal and state regulations regarding safely loading and securing the rig.[62] Under applicable federal regulations, the carrier is solely responsible for distributing and loading cargo.[63] The Texas Transportation Code provides that

---

[60] *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

[61] *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) ("A court may instruct a verdict if no evidence of probative force raises a fact issue on the material questions in the suit.").

[62] *See* 49 C.F.R. § 392.9 (2007); 37 Tex. Admin. Code § 4.11 (last amended 2008) (Tex. Dep't of Pub. Safety).

[63] For example, section 392.9 provides:

[A] motor carrier may not require or permit a driver to operate a

22

"the duties and liabilities of a carrier in this state and the remedies against the carrier are the same as prescribed by the common law" unless otherwise provided by law.[64]

At common law, carriers are "fully" liable for any loss or injury to property occurring during transport.[65] Carriers, however, may avoid this liability by affirmatively showing that the loss or injury at issue was caused solely by the fault of the shipper.[66] This exception to carrier liability, however, only applies when the shipper assumes the carrier's responsibility for loading and securing the cargo.[67]

---

commercial motor vehicle unless ––

(1) the commercial motor vehicle's cargo is properly distributed and adequately secured as specified in §§ 393.100 through 393.136 of this subchapter.

49 C.F.R. § 392.9.

[64] Tex. Transp. Code Ann. § 5.001(a)(1) (Vernon 1999).

[65] *Common Carrier Motor Freight Ass'n v. NCH Corp.*, 788 S.W.2d 207, 209 (Tex. App.—Austin 1990, writ denied); *see United States v. Savage Truck Line Inc.*, 209 F.2d 442, 445–47 (4th Cir. 1953), *cert. denied*, 347 U.S. 952 (1954).

[66] *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 368 S.W.2d 99, 101 (Tex.1963), *aff'd,* 377 U.S. 134 (1964); *see also Cent. Freight Lines, Inc. v. Naztec, Inc.*, 790 S.W.2d 733, 735 (Tex. App.—El Paso 1990, no writ); *Utils. Pipeline Co. v. Am. Petrofina Mktg.*, 760 S.W.2d 719, 723 (Tex. App.—Dallas 1988, no writ).

[67] *See Savage Truck Line Inc.*, 209 F.2d at 445–47.

**2. J&S and Jackson Did Not Assume the Duty to Safely Load and Secure the Rig**

The evidence in this case shows that Texas Specialty and Kellerman retained full control and responsibility for loading and securing the rig. Williams conceded during his deposition testimony that Texas Specialty retained responsibility to load and secure the rig, despite J&S's assistance:

Q: Well, now, Texas Specialty Trailer has the responsibility to load and secure its load that it's going to haul?

A: We have the responsibility to secure whatever we haul, yes, sir.

Q: And what I'm trying to get down is a breakdown as to what [J&S] was going to do and what Texas Specialty was going to do before the tractor trailer pulled out of the yard . . . .

A: What I want to –– We was [*sic*] told that there would be –– [J&S's] crew would be there to assist us is [*sic*] in any way we needed to help get the rig up there.

Q: To do whatever you needed them to do?

A: Right.

Q: Whatever you directed them to do?

A: Whatever we asked to do, yes.

Q: Okay. But as far as securing the load, as between Jackson & Simmen and Texas Specialty, that was Texas Specialty's responsibility?

A: That was Texas Specialty's.

Similarly, Kellerman testified that he was responsible for loading the rig:

24

Q: Who's in charge of loading that rig?

A: Me.

. . . .

Q: So let's say Mr.--Mr. Williams come [*sic*] in and says, I want to do this differently; and you feel like this is unsafe, you're not driving the rig?

A: I'm responsible.

Q: Okay. And so the day that this rig was loaded, it was under your direction and control?

A: Yes, sir.

Q: All right. And as you --as you sit here this morning, you're -- you're taking full responsibility for the loading of that rig?

A: Yes, sir.

Based on the evidence, we conclude that J&S and Jackson had no duty as a matter of law with regard to the loading of the rig, and, thus, the trial court did not err or abuse its discretion in failing to treat them as responsible parties or in refusing to submit to the jury issues regarding their proportionate responsibility. The fact that J&S and Jackson assisted in loading the rig, without more, does not impose on them a duty to insure the safe and secure loading of the rig.[68] Accordingly, we overrule appellants' third, fourth, and fifth issues.

---

[68] *See, e.g.*, *Elmore & Stahl*, 368 S.W.2d at 101.

## VII. Prejudgment Interest

In their eighth issue on appeal, appellants contend that the trial court erred in awarding J&S prejudgment interest on its claims for the cost to repair or replace the rig and for its lost profits.

## A. Standard of Review

We review a trial court's award of prejudgment interest under the abuse of discretion standard.[69] Under this standard, we will not disturb a trial court's findings on factual issues unless the court reasonably could have reached only one decision and it failed to do so.[70] However, a "trial court has no 'discretion' in determining what the law is or applying the law to the facts."[71] The abuse of discretion standard applies to the trial court's factual findings as they relate to prejudgment interest, but the de novo standard applies to the trial court's application of the law to the facts.[72]

---

[69] *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 785 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.) (citing *J.C. Penney Life Ins. Co. v. Heinrich*, 32 S.W.3d 280, 289 (Tex. App.—San Antonio 2000, pet. denied)).

[70] *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992)).

[71] *Walker*, 827 S.W.2d at 840 (citation omitted).

[72] *Toshiba Mach. Co.*, 180 S.W.3d at 785.

**B.      Damages to Repair or Replace the Rig**

Appellants complain that the damages of $750,000 to repair or replace the rig constitutes "future damages" because the rig had not been repaired as of the date judgment was entered, and, thus, the award of prejudgment interest on these damages is improper.

Prejudgment interest is not recoverable for future losses.[73] Instead, it is intended to compensate "for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment."[74]

It is undisputed in this case that J&S's claim accrued when the rig sustained damage at the time of the accident.  J&S's right to money damages for repair or replacement of the rig accrued at this time, not when the rig was or will be actually repaired or replaced.  Therefore, we hold these are not future damages and that the trial court did not abuse its discretion in awarding prejudgment interest on J&S's claim for damages to repair or replace the rig.

---

[73] *See* Tex. Bus. & Com. Code Ann. § 17.50(f) (Vernon Supp. 2008) (stating in part that "[a] court may not award prejudgment interest applicable to . . . damages for future loss under [the DTPA]"); *see also* Tex. Fin. Code Ann. § 304.101 (Vernon 2006) ("This subchapter applies only to a wrongful death, personal injury, or property damage case of a court of this state."). Prejudgment interest may not be assessed or recovered on an award of future damages governed by chapter 304 subchapter B.  *See* Tex. Fin. Code Ann. § 304.1045 (Vernon 2006).

[74] *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 812 (Tex. 2006).

## C.    Lost Profit Damages

Appellants also contend that the trial court improperly awarded prejudgment interest on J&S's lost profits damages because past and future lost profits were not segregated.  J&S concedes that the trial court erred in awarding prejudgment interest as to the future lost profits, but asks that we modify the judgment by reducing it by an amount it claims is attributable to prejudgment interest on future lost profits only.

To recover prejudgment interest on an award of past damages, the party seeking to obtain prejudgment interest must segregate past damages from future damages.[75]  Prejudgment interest is not recoverable on the elements of damages at issue when this burden is not met.[76]  Accordingly, we reverse and vacate the award of prejudgment interest on J&S's lost profits.[77]  Appellants' eighth issue challenging the award of prejudgment interest on J&S's lost profits is sustained.  Otherwise, the eighth issue is overruled.

---

[75] *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 556 (Tex. 1985); *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 223 (Tex. App.—Amarillo 2003, no pet.).

[76] *Cavnar*, 696 S.W.2d at 556; *KMG Kanal-Muller-Gruppe Deutschland GmbH & Co. KG v. Davis*, 175 S.W.3d 379, 396–97 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Cresthaven*, 134 S.W.3d at 223.

[77] *See, e.g., Cavnar*, 696 S.W.2d at 556; *KMG Kanal-Muller-Gruppe Deutschland*, 175 S.W.3d at 396–97.

## VIII.  Conclusion

We reverse the judgment in part as to Williams' individual liability and the award of prejudgment interest on J&S's lost profits.  Accordingly, we render judgment that J&S take nothing from Williams individually on J&S's negligence claim, we vacate the award of prejudgment interest on J&S's lost profits, and we remand the case to the trial court to recalculate prejudgment interest on J&S's remaining damages that are subject to prejudgment interest, excluding the amounts improperly awarded as future lost profits.  In all other respects, we affirm the judgment of the trial court.

JOHN CAYCE
CHIEF JUSTICE

PANEL:  CAYCE, C.J.; WALKER, J.; and HOLMAN, J. (Retired)

HOLMAN, J. (Retired), not participating.  *See* Tex. R. App. P. 41.1(b)

DELIVERED:  August 13, 2009