Opinion issued June 2, 2011

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00267-CV

———————————

Robert Todd, Norman TalbotT, and Clear Water Pools, Appellants

V.

Paul
Heinrich,
Appellee



 



 

On Appeal from the County Court at Law No. 2

Fort Bend County, Texas



Trial Court Case No. 09-CCV-039608

 



 

MEMORANDUM OPINION

          Paul
Heinrich sued appellants, Robert Todd, Norman Talbott, and Clear Water Pools
(collectively, “Clear Water”), for violations of the Deceptive Trade Practices Act,
breach of contract, and breach of warranty arising out of Clear Water’s
allegedly faulty construction of concrete decking surrounding a swimming
pool.  After Clear Water failed to
respond to requests for admissions, Heinrich moved for summary judgment on his
own claims.  Clear Water neither
responded to the motion nor appeared at the hearing, and the trial court
rendered summary judgment in Heinrich’s favor. 
In two issues on appeal, Clear Water contends that the trial court (1) abused
its discretion by refusing either to withdraw the deemed admissions or to allow
a late summary judgment response, and (2) erroneously rendered summary
judgment because Heinrich failed to conclusively establish his entitlement to
relief on his claims.

          We
affirm.

Background

          On
May 1, 2008, Heinrich entered into a contract with Clear Water for the
construction of a swimming pool and concrete decking at his residence.  The contract included the following written
“Guarantee/Warranty”:  “DBA Clear Water
Pools hereinafter called ‘contractor’ guarantees its work to be free from
defects in material and workmanship for a period of one (1) year to the
original owner (non-transferable) from completion of pool, providing owner has
complied in full with the terms and payments and other conditions of this
contract.”  Clear Water completed
construction of the pool and the decking on May 19, 2008.  Heinrich fully paid the amount owed under the
contract on June 20, 2008.

          That
same day, Heinrich began to discover cracks forming around the drain areas of
the concrete decking.  Heinrich informed
Talbott of the cracks on July 24, 2008. 
The parties “exchanged correspondence” regarding the cracks until
February 19, 2009, and although Clear Water “made multiple promises to fix and
repair the cracks in the spray decking,” it never attempted to fix the problem.

          Heinrich
sued Clear Water for violations of the Deceptive Trade Practices Act (“DTPA”),
breach of contract, and breach of warranty. 
Heinrich alleged that Clear Water violated the DTPA by representing that
the decking would last for one year without cracks and that any defects would
be warranted for one year.  Heinrich
alleged that when cracks began to form in the decking, Clear Water promised to
fix the cracks, “but never intended to satisfy that promise.”  Further, Heinrich claimed that Clear Water
breached an express warranty in violation of the DTPA because the contract
warranted “the structure and materials from all defects within a one year
period.”  Heinrich alleged that Clear
Water represented to him that it would build a decking without cracks and that he
relied upon this representation to his detriment.  Heinrich also asserted that Clear Water was
“actually aware, at the time of the conduct, of the falsity, deception, and
unfairness of the conduct about which [Heinrich] complains,” and Heinrich thus
claimed that he was entitled to treble damages.

          In
the alternative, Heinrich asserted claims for breach of contract and breach of
warranty for services.  Heinrich alleged
that he had a contractual relationship with Clear Water, “wherein [Clear Water]
agreed to build a spray decking without cracks that would appear within a short
period of building it and warranted for the spray decking for one year.”  Clear Water breached the contract when the
decking began to crack within six weeks of installation, and it then “refused
to properly fix the decking.”  Clear
Water also “made a representation to [Heinrich] about the quality of the
services that the spray decking and structures that were installed would be
free from all defects for one year or [Clear Water] would repair and fix such
defects.”

          Todd
and Talbott answered the lawsuit pro se. 
On August 13, 2009, Heinrich sent requests for admissions to Talbott via
certified and first-class mail.  These
requests were returned unclaimed.  On
September 7, 2009, Heinrich sent identical requests for admissions to Todd and
re-sent the requests to Talbott.  The
cover letter for the admissions requests informed Talbott and Todd that they
had thirty days to respond to the requests and warned them that “[f]ailure to
respond to such discovery requests may attribute to deemed admissions.”  Neither Talbott nor Todd ever responded to
these requests.

          On
October 6, 2009, Heinrich’s attorney, Daniel Lee, received a phone call from
another attorney, Richard Muller, who called on behalf of Talbott to discuss
settlement options.  Lee testified by
affidavit that he asked Muller if he was representing the Clear Water defendants,
and Muller responded that he was only calling “as a favor to a friend to facilitate
a settlement.”  Muller also informed Lee
that he would not be representing Clear Water in the future.  Muller never filed a pleading or other
document on behalf of Clear Water; he never made an appearance in court on
behalf of Clear Water; he never requested that any deadlines to respond to discovery
requests be postponed; and he never answered any outstanding discovery requests
on behalf of Clear Water.

          Heinrich
filed his first amended petition, which was substantively identical to his
original petition, on October 23, 2009.  Although
he served both Talbott and Todd, he did not serve this petition on Muller.  On October 26, 2009, Heinrich served a second
set of admissions requests on both Talbott and Todd.  Again, he did not provide a copy of these
requests to Muller.  Neither Talbott nor
Todd responded to the second set of requests for admissions.

          On
November 6, 2009, Heinrich moved for summary judgment on his DTPA and breach of
contract claims.  In the motion, Heinrich
clearly stated the following:  “On
September 9, 2009, Plaintiff served Defendants, Norman Talbott and Robert Todd,
Requests for Admissions via Certified and First Class Mail.  Both Defendants have not responded to such
requests.  These admissions are therefore
deemed.”  Heinrich argued that summary
judgment was proper on his DTPA claim because (1) “Defendants stated and
represented to Plaintiff that the concrete used on the decking was of a
particular grade and quality, when the quality of materials used was of a poor
grade and quality,” in violation of the DTPA “laundry list,” and (2) Clear
Water expressly warranted that its work would be free from defects in materials
and workmanship for one year, and, after the decking began to crack, Clear
Water failed to complete repairs.  Heinrich
contended that summary judgment was proper on his breach of contract claim
because (1) he had fully performed under the contract by paying all money owed
to Clear Water, (2) Clear Water breached the contract when cracks began to form
in the decking one month after installation, and (3) the cost to repair the
deck was approximately $23,207.

          As summary
judgment evidence, Heinrich attached the following:  (1) the contract between Clear Water and
himself; (2) photographs of the cracks in the concrete, taken on March 20, 2009;
(3) e-mail correspondence between Heinrich and Talbott; (4) the written warranty
included in the contract; (5) an affidavit concerning damages and a remodel
proposal; and (6) the deemed admissions.[1]  The e-mail correspondence is a January 9,
2009 e-mail from Talbott informing Heinrich that one of Clear Water’s employees
would fix the defects by completely removing the deck and re-pouring it.  Talbott also stated in the e-mail:  “We are truly sorry for what happened to your
deck.  We always try to do good work, but
it appears that we got a hold of some bad concrete.  Who really knows?????  Anyway, we stand by our work and we stand by
our warranties and we will fix this problem.”

          The
summary judgment motion included a notice informing Clear Water that the motion
would be considered at a hearing on December 22, 2009, over a month-and-a-half from
the date Heinrich filed and served the motion. 
Heinrich served Clear Water with the summary judgment motion and the
notice of hearing, but he did not serve the motion and the notice on Muller.

          On
November 24, 2009, Muller mailed Lee a letter containing a proposal from
Talbott to remove the deck and replace it “no later than January 31st” in an
effort to resolve the controversy.  This
letter did not state that Muller represented Talbott and the other
defendants.  Lee allegedly “immediately
contacted” Muller’s firm and spoke with his assistant.  When asked if Talbott or the other Clear
Water defendants were clients of the firm, Muller’s assistant checked the
firm’s files and stated that they were not clients.  While he was on the phone with Muller’s
assistant, Lee did not inform her of either the pending summary judgment motion
or the outstanding discovery requests and deemed admissions.

          Clear
Water did not file a response to Heinrich’s summary judgment motion, nor did it
appear at the December 22, 2009 hearing on the motion.  The trial court rendered summary judgment in
favor of Heinrich on both his DTPA and breach of contract claims.  The trial court specified that it found in
favor of Heinrich “[w]ith respect to the cause of action for Breach of Warranty
as a violation of the Texas [DTPA].”  Heinrich
elected to recover under the DTPA, and the trial court ultimately awarded him a
total of $77,369.22.

          Clear
Water obtained counsel and moved for a new trial, requesting that the trial
court withdraw the deemed admissions and allow a late summary judgment
response.  Clear Water contended that it
was represented by counsel—Muller—at the time that Heinrich filed his summary
judgment motion and that it could establish good cause and no undue prejudice
to Heinrich.  Clear Water contended that,
although it was represented by Muller, Heinrich never served discovery requests,
the summary judgment motion, or the notice of hearing on Muller, nor did
Heinrich inform Muller of the pending summary judgment motion or the deemed
admissions after Muller’s November 24, 2009 letter to Lee.  Clear Water argued that Heinrich could not
obtain a judgment against it due to his failure to provide notice to its
counsel pursuant to Texas Rules of Civil Procedure 21 and 21a.

          Clear
Water further argued that it was entitled to request the withdrawal of the
deemed admissions for the first time in its motion for new trial.  Clear Water argued that it could demonstrate
“good cause” for its failure to timely respond to the admissions requests
because Talbott contacted Muller, and Muller discussed settlement options with Lee
before the response deadline.  According
to Clear Water, neither Talbott nor Muller intended to ignore the admissions;
“[r]ather[,] they both mistakenly thought the parties were working towards some
type of settlement.”  Clear Water further
contended that withdrawing the deemed admissions and allowing additional time
to respond to the summary judgment motion would not cause undue prejudice to
Heinrich because there was no current trial setting, the case was less than one
year old, and the discovery deadline was March 27, 2010.

          In
support of its motion for new trial, Clear Water attached the affidavits of
Muller and Talbott.  Muller averred that
he first spoke with Talbott regarding the case around the beginning of October
2009.  Muller agreed to help the
defendants resolve the case without going to trial.  According to Muller, Talbott gave him a copy
of Heinrich’s original petition, but Muller was not aware of whether Talbott
had answered.  Muller averred that he
contacted Lee on October 6, 2009, to discuss settlement opportunities.  Muller stated that he informed Lee that he
was representing Clear Water.  After Lee said
that he would discuss settlement with Heinrich, Muller “attempted to contact
[Lee] numerous times by phone and email, but could never get him to return
[Muller’s] call.”  Muller sent a
follow-up letter on November 24, and Lee left a message stating that the settlement
offer contained in the letter might be acceptable to Heinrich.  Although Muller tried to contact Lee on
several occasions after this message, Lee never responded to Muller’s
calls.  Based on his conversation with
Lee, Muller believed that the parties were going to attempt to settle the case
before proceeding to trial.  Muller
averred that he did not respond to the admissions requests or the summary
judgment motion “because [Muller] did not know about either and [Lee] never
mentioned anything or informed [Muller] at all about either.”  Muller stated that any failure to respond to
the admissions or summary judgment motion “was an accident and/or a mistake,”
because he thought the parties “were going to try and work to see if we could
settle the case.”

          Talbott
averred that he spoke with Muller in late September or early October, and
Muller agreed to represent the defendants. 
Talbott gave Muller “all the papers [the defendants had received] from
the Plaintiff’s attorney at that time and [Muller] said he would take care of
it.”  Talbott averred that he gave Muller
“settlement authority to try and resolve the case.”  Talbott believed that Muller had
“communicated to [Lee] our settlement and [the defendants] were just waiting for
[Lee’s] response.”  Talbott received
“more legal papers” from Heinrich in early November, and he spoke with Muller
about the case.  Muller told him that he
had not received any documents from Heinrich. 
Muller informed Talbott that he had not heard from Lee and that “[Muller]
thought the parties were going to work together to resolve the issues without
incurring significant legal fees and expenses.” 
Talbott averred that he did not hear anything else about the case until
January 19, 2010, when Muller informed him that the trial court had entered a
judgment against the defendants in December. 
Talbott further stated:

I learned later Plaintiff’s
attorney had filed some motion and we didn’t respond so the Judge signed a
judgment against us.  I did not respond
to anything from the Plaintiff’s attorney because I thought [Muller] was taking
care of everything and he told Plaintiff’s counsel he was representing us.  Any failure (by me or [Todd]) to respond to
the different legal papers sent us was not intentional.  We both thought [Muller] was handling
everything and further that the case was going to get settled.

 

          In
response, Heinrich argued that although Muller contacted Lee, he stated that he
was not representing Clear Water and he never indicated to Lee or the court,
prior to the motion for new trial, that he or his firm represented Clear Water.  Heinrich contended that he had “no duty to
serve motions to non-existing counsel,” and stated that Clear Water had never
filed an appearance of counsel, moved to withdraw or substitute counsel, or
“supplied the Court with any documents indicating the existence of
counsel.”  Heinrich argued that:  “Defendants had ample amount of time and
notice to answer and respond to these pleadings and to obtain an attorney for
representation and just chose not to do so. 
The fact that the Defendants neglected to obtain counsel until after the
judgment was rendered shows conscious indifference to the administration of
court proceedings.”

          In
support of his response, Heinrich attached an affidavit from Lee.  Lee averred:

[S]ome time in October 2009
I received a call from Richard Muller on behalf of Norman Talbott asking to
resolve this case.  I asked him if he was
Talbott’s attorney and if he was going to enter in as attorney of record for
the defendants.  He stated that he is not
the Defendants[’] attorney and is only calling as a favor to a friend to
facilitate a settlement.  He also
reiterated that he would not be representing the defendants in the future.

 

Lee stated that he informed Heinrich of Clear
Water’s settlement offer, communicated by Muller, and, after Heinrich refused
the offer, Lee left a message for Muller stating Heinrich’s position.  Lee further averred that the November 24,
2009 letter from Muller made “no mention of representing the defendants,” and
he immediately contacted Muller’s assistant upon receipt of the letter.  She stated that neither Talbott nor the other
Clear Water defendants were clients of Muller or his firm.  Lee concluded by stating that “[a]t no point
in time while [Lee] was working on the case and while speaking to Mr. Talbott
or Richard Muller was there any indication Mr. Talbott or any of the defendants
were represented by counsel.”

          After
a hearing, the trial court denied Clear Water’s motion for new trial.  This appeal followed.

 

Withdrawal of Deemed Admissions

          In
its first issue, Clear Water contends that the trial court abused its
discretion by neither withdrawing the admissions deemed against it nor allowing
it to file a late summary judgment response. 
Clear Water contends that its failure to respond to the admissions and
the summary judgment motion was not intentional or the result of conscious
indifference because Talbott believed that Muller was representing the
defendants and handling the case, and Muller believed that he was trying to
reach a settlement agreement.  Clear
Water argues that Muller knew nothing about the outstanding admissions requests
or the pending summary judgment motion.

          Once
an action is filed, a party may serve written requests for admissions.  Tex.
R. Civ. P. 198.1; Boulet v. State,
189 S.W.3d 833, 836 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  These requests can encompass “any matter
within the scope of discovery, including statements of opinion or of fact or of
the application of law to fact . . . .”  Tex.
R. Civ. P. 198.1; see also
Maswoswe v. Nelson, 327 S.W.3d 889, 896–97 (Tex. App.—Beaumont 2010, no
pet.) (“[A] party may ask another party to admit or deny issues of fact
relevant to the pending action or to apply the law to relevant issues of
fact . . . .”).  If
the opposing party does not serve its responses to the admissions requests
within thirty days, the matters in the requests are deemed admitted against that
party without the necessity of a court order. 
Tex. R. Civ. P. 198.2(c); Wal-Mart Stores, Inc. v. Deggs, 968
S.W.2d 354, 355 (Tex. 1998) (per curiam). 
Any matter admitted or deemed admitted is conclusively established
unless the court, on motion, permits withdrawal or amendment of the
admission.  Tex. R. Civ. P. 198.3; Boulet,
189 S.W.3d at 836 (citing Marshall v.
Vise, 767 S.W.2d 699, 700 (Tex. 1989)).

          Withdrawal
of deemed admissions is permitted upon a showing of good cause and a finding by
the trial court that (1) the party relying upon the deemed admissions will not
be unduly prejudiced, and (2) presentation of the merits of the action will be
served.  Tex. R. Civ. P. 198.3; Wheeler
v. Green, 157 S.W.3d 439, 442 (Tex. 2005) (per curiam) (holding that
standard for withdrawal of deemed admissions—good cause and no undue prejudice—is same as standard for allowing late summary judgment response) (citing Carpenter v. Cimarron Hydrocarbons Corp.,
98 S.W.3d 682, 687–88 (Tex. 2002)).  Good
cause is established by demonstrating that the failure involved was either an
accident or mistake, not intentional or the result of conscious
indifference.  Wheeler, 157 S.W.3d at 442; Boulet,
189 S.W.3d at 836.  The party seeking
withdrawal of the deemed admissions has the burden to establish good
cause.  Boulet, 189 S.W.3d at 836 (citing Webb v. Ray, 944 S.W.2d 458, 461 (Tex. App.—Houston [14th Dist.]
1997, no writ)).  “Undue prejudice
depends on whether withdrawing an admission or filing a late response will
delay trial or significantly hamper the opposing party’s ability to prepare for
it.”  Wheeler,
157 S.W.3d at 443.  As part of the undue
prejudice inquiry, the trial court must find that “presentation of the
merits . . . [is] subserved by permitting withdrawal.”  Id.
at 443 n.2 (citing Tex. R. Civ. P.
198.3(b)).  “Presentation of the merits
will suffer (1) if the requesting party cannot
prepare for trial, and also (2) if the requestor can prepare but the case is decided on deemed (but perhaps untrue)
facts anyway.”  Id.; Boulet, 189 S.W.3d
at 837.

          “Conscious
indifference” has been defined as “the failure to take some action that would
seem obvious to a reasonable person in the same circumstance.”  In re
A.P.P., 74 S.W.3d 570, 573 (Tex. App.—Corpus Christi 2002, no pet.) (citing
Norton v. Martinez, 935 S.W.2d 898,
901 (Tex. App.—San Antonio 1996, no writ) and Johnson v. Edmonds, 712 S.W.2d 651, 652–53 (Tex. App.—Fort Worth
1986, no writ)).  Conscious indifference
requires more than a showing of negligence. 
See Levine v. Shackelford, Melton
& McKinley, L.L.P., 248 S.W.3d 166, 168 (Tex. 2008) (per curiam).  Some excuse for the failure to answer, not
necessarily a good excuse, will be sufficient to show that the failure was
accidental.  See Craddock v. Sunshine Bus Lines, Inc., 133 S.W.2d 124, 125 (Tex.
1939); In re A.P.P., 74 S.W.3d at 573.  Uncontroverted factual allegations in a
motion for new trial and accompanying affidavits, if true, can negate intent or
conscious indifference.  Jackson v. Mares, 802 S.W.2d 48, 50 (Tex.
App.—Corpus Christi 1990, writ denied). 
If the nonmovant presents controverting evidence showing conscious
indifference, the issue becomes a fact question for the trial court.  Id.;
see also Moya v. Lozano, 921 S.W.2d
296, 299 (Tex. App.—Corpus Christi 1996, no writ) (holding that we review all
evidence in record to determine whether allegations are controverted).  “The court, as fact-finder at a hearing on a
motion for new trial, has the duty of ascertaining the true
facts . . . and it is within the court’s province to judge
the credibility of the witnesses and to determine the weight to be given their
testimony.”  Jackson, 802 S.W.2d at 51.

          We
will not set aside a trial court’s ruling denying the withdrawal of deemed
admissions unless we find that the trial court abused its discretion.  Boulet,
189 S.W.3d at 837; see also Wheeler,
157 S.W.3d at 443 (“We recognize that trial courts have broad discretion to
permit or deny withdrawal of deemed
admissions . . . .”). 
The trial court cannot deny the withdrawal of admissions arbitrarily,
unreasonably, or without reference to guiding rules or principles.  Wheeler,
157 S.W.3d at 443 (citing Stelly v.
Papania, 927 S.W.2d 620, 622 (Tex. 1996)); Boulet, 189 S.W.3d at 837.

          Heinrich
contends that Clear Water waived its challenge to the deemed admissions by
failing to move to withdraw the admissions until its motion for new trial.  We agree.

          In Wheeler, Wheeler, acting pro se, served her
responses to the admissions requests two days late due to her misunderstanding
of the mailbox rule.  157 S.W.3d at 441.  Green attached the admission requests to his
summary judgment motion, but he did not mention that he had received responses from
Wheeler, albeit two days late.  Id. 
Wheeler did not respond to the summary judgment motion, but she did
attend the summary judgment hearing.  Id. 
She did not request that the trial court withdraw the deemed admissions and
allow a late-filed summary judgment response until her motion for new
trial.  Id. at 441–42.  The Texas
Supreme Court held that, under these circumstances, Wheeler did not waive her
complaints by presenting them for the first time in her motion for new trial
because nothing in the record suggested that, before the trial court granted
summary judgment, she realized that her admissions responses were late, that
she needed to move to withdraw the deemed admissions, or that she needed to
file a response to the summary judgment motion to raise this argument.  Id.
at 442; see also Cimarron, 98 S.W.3d
at 686 (holding that equitable principles allowing these arguments to be made
in motion for new trial do not apply if party realizes its mistake before
judgment and has other avenues of relief available).

          In Unifund CCR Partners v. Weaver, the
Texas Supreme Court distinguished Wheeler
and held that when a summary judgment motion put the party seeking withdrawal
of deemed admissions on notice of his mistake before the trial court rendered
judgment, the party waived the right to raise the issue in a post-judgment filing.  262 S.W.3d 796, 798 (Tex. 2008) (per
curiam).  Although Weaver, a pro se
litigant, filed a letter with his responses to the admissions requests
attached, the record did not indicate that he actually served Unifund with his
responses.  Id. at 797.  In its summary
judgment motion, Unifund asserted that the facts presented in its requests for
admissions were deemed admitted due to Weaver’s failure to timely serve his
responses.  Id.  Weaver did not file a
summary judgment response, and he did not argue that he had properly served
Unifund with his responses until a post-judgment filing.  Id.  The supreme court construed Weaver’s
post-judgment filing as a motion for new trial and held that “Unifund’s motion
for summary judgment put [Weaver] on notice of the deficiency of his
response:  that Unifund never received
the response because Weaver had not served, or attempted to serve, the response
on Unifund.”  Id. at 798.  As a result,
unlike in Wheeler, Weaver knew of his
mistake regarding the admissions before the trial court rendered judgment, and
he could have responded to Unifund’s summary judgment motion or requested the
withdrawal of the deemed admissions.  Id. 
Because he did neither, “he waived his right to raise the issue
thereafter.”  Id.; see also Marino v. King,
No. 10-09-00368-CV, 2010 WL 3434620, at *2 (Tex. App.—Waco Sept. 1, 2010, no
pet.) (mem. op.) (“Similar to Unifund,
Marino was given notice of the late filing of her answers to the request for
admissions in King’s motion for summary judgment.  Marino did not attempt to have the trial
court withdraw the admissions prior to the entry of judgment against her.”).

          Here,
it is undisputed that Clear Water never responded to Heinrich’s requests for
admissions, it did not respond to Heinrich’s summary judgment motion, it did
not appear at the summary judgment hearing, and it did not request the
withdrawal of the deemed admissions until its motion for new trial.  Heinrich’s requests for admissions clearly
informed Clear Water that it had thirty days to serve its responses or the
admissions would be deemed against it.  In
his summary judgment motion, Heinrich stated:

On September 9, 2009,
Plaintiff served Defendants, Norman Talbott and Robert Todd, Requests for
Admissions via Certified and First Class Mail. 
Both Defendants have not responded to such requests.  These admissions are therefore deemed.

 

Heinrich attached a copy of the admissions requests
as summary judgment evidence, and he referenced the deemed admissions
throughout his summary judgment motion.

          We
conclude that Heinrich’s summary judgment motion put Clear Water on notice of its
failure to respond to the admissions requests. 
See Weaver, 262 S.W.3d at
798.  Thus, Clear Water knew of its
mistake before the trial court rendered summary judgment, and it could have
requested the withdrawal of the admissions in either a summary judgment
response or a separate motion seeking withdrawal.  Because it did neither, we hold that Clear
Water waived its right to raise the issue and seek withdrawal in its motion for
new trial.  See id.

          Even
if Clear Water did not waive its challenge to the deemed admissions by failing
to raise the issue before its motion for new trial, we conclude that the trial
court did not abuse its discretion in denying Clear Water’s request to withdraw
the deemed admissions and allow a late-filed summary judgment response because the
trial court could have reasonably concluded that Clear Water did not establish
good cause for its failure to respond.

          Clear
Water argues that the affidavits of Muller and Talbott, attached to its motion
for new trial, demonstrated that its failure to respond was “not intentional or
the result of conscious indifference” because Talbott believed that Muller was
handling the case and Muller, who was unaware of the outstanding admissions and
the pending summary judgment, believed that he was trying to settle the
case.  According to Clear Water, Muller’s
mistake was “compounded” by the fact that Lee did not serve or otherwise inform
Muller of the deemed admissions or the summary judgment motion.

          Texas
Rule of Civil Procedure 8 provides that, “[o]n the occasion of a party’s first
appearance through counsel, the attorney whose signature first appears on the
initial pleadings for any party shall be the attorney in
charge . . . .”  Tex. R. Civ. P. 8.  “All communications from the court or other
counsel with respect to a suit shall be sent to the attorney in charge.”  Id.;
see also Lester v. Capital Indus. Inc.,
153 S.W.3d 93, 96 (Tex. App.—San Antonio 2004, no pet.) (“Once Lester’s
attorney made an appearance in the
case, all communications from opposing counsel with respect to the suit should
have been sent to him, including notice of the summary judgment motion and
hearing.  Failure to send notice violated
Rules 8, 21a, and 166a(c) of the Texas Rules of Civil Procedure.”) (emphasis
added).  An attorney may become “an
‘attorney of record’ by filing pleadings or appearing in open court on a party’s
behalf.”  Smith v. Smith, 241 S.W.3d 904, 907 (Tex. App.—Beaumont 2007, no
pet.).  If a party presents evidence that
an attorney “undertook a limited role in a matter,” such as evidence of an
agreement to provide advice or an agreement to facilitate a settlement, this
evidence does not constitute “the equivalent of making an appearance on the
client’s behalf.”  See id. at 908.

          Muller
and Talbott both averred that Muller had agreed to represent Clear Water, and
that he was working to facilitate a settlement agreement with Heinrich.  Muller further averred that he informed Lee
during their October 6, 2009 phone conversation that he was representing Clear
Water.  Talbott averred that, after
discussing the case with Muller, he gave Muller all of the documents that he
had received regarding the case and that he spoke with Muller about the case
after he received Heinrich’s summary judgment motion.

          Lee
contradicted these allegations in his affidavit filed in response to Clear
Water’s motion for new trial.  Lee
averred that when he first spoke to Muller, he asked him whether he was “going
to enter in as attorney of record for the defendants,” and Muller stated that
he was not Clear Water’s attorney, but, instead, he was merely “calling as a
favor to a friend to facilitate a settlement.” 
During this conversation, Muller also “reiterated that he would not be
representing the defendants in the future.” 
Lee further averred that after he received a letter from Muller in late
November communicating a settlement offer from Talbott, he spoke with Muller’s
assistant who confirmed that Clear Water was not a client of Muller or his
firm.  Lee finally stated that, “[a]t no
point in time while I was working on the case and while speaking to Mr. Talbott
or Richard Muller was there any indication [that] Mr. Talbott or any of the
defendants were represented by counsel.”

          It is
undisputed that Muller never filed a pleading or motion on behalf Clear Water,
never appeared on behalf of Clear Water in open court, never responded to any
discovery requests on behalf of Clear Water, and never filed any designation of
“attorney of record” for Clear Water.  If,
in fact, Muller was Clear Water’s attorney as of October 6, 2009, as he now
avers, he had a professional responsibility to ascertain whether Talbott had
answered the petition Talbott gave him and to appear.  He avers that he did not apprise himself of
the state of the proceedings against his client.  Muller did not appear in the litigation, nor
did he take any of the actions required of an attorney representing a client in
litigation.  We conclude that Muller was
not Clear Water’s attorney of record, and, thus, Heinrich was not obligated
under the Rules of Civil Procedure either to serve Muller with amended
pleadings, motions, and discovery requests or to inform Muller of the
outstanding discovery requests and pending summary judgment motion.  See
Smith, 241 S.W.3d at 907–08; Tex. R.
Civ. P. 8.

          In
its motion for new trial, in addition to arguing that it was represented by
counsel who failed to receive the discovery requests and summary judgment
motion, Clear Water also argued that both Talbott and Muller “mistakenly
thought the parties were working towards some type of settlement,” which
constitutes “good cause” for the failure to respond to the admissions requests
and the summary judgment motion.  Clear
Water cites no authority for the proposition that believing that the parties were
working toward a settlement agreement suspends discovery and pretrial deadlines
and allows parties to ignore discovery requests, and, thus, constitutes an
excuse for failure to respond.  Clear
Water presented no evidence that it ever entered into a Rule 11 agreement with
Heinrich to waive or postpone discovery deadlines while the parties tried to
reach a settlement.  Clear Water also
presented no evidence that it moved the trial court for an extension of time to
respond either to the discovery requests or to the summary judgment motion.  Instead, the record demonstrates a pattern of
ignoring discovery requests and failing to respond to requests and motions.[2]  See
Levine, 248 S.W.3d at 169 (“This pattern of ignoring deadlines and warnings
from the opposing party amounts to conscious indifference.”).

          When
the party seeking withdrawal of deemed admissions and permission to late-file a
summary judgment response presents evidence and allegations negating conscious
indifference and the nonmovant presents controverting evidence, the issue of
conscious indifference becomes a fact question for the trial court.  See
Jackson, 802 S.W.2d at 50.  As the
fact-finder at a hearing on a motion for new trial, it is “within the court’s
province to judge the credibility of the witnesses and to determine the weight
to be given their testimony.”  Id. at 51; see also Imkie v. Methodist Hosp., 326 S.W.3d 339, 344 (Tex.
App.—Houston [1st Dist.] 2010, no pet.) (holding that, when reviewing denial of
motion for new trial, we view evidence in light most favorable to trial court’s
ruling, draw all legitimate inferences from evidence, and defer to trial
court’s resolution of conflicting evidence). 
We conclude, based on this record, that the trial court did not err in
implicitly concluding that Clear Water did not establish good cause for its
failure to respond to the admissions requests and the summary judgment
motion.  We therefore hold that the trial
court did not abuse its discretion in refusing either to withdraw the deemed
admissions or to allow a late-filed summary judgment response.

          We
overrule Clear Water’s first issue.

Summary Judgment on Heinrich’s Claims

          In
its second issue, Clear Water contends that the trial court erroneously
rendered summary judgment in favor of Heinrich because Heinrich failed to carry
his summary judgment burden and establish that there were no genuine issues of
material fact and that he was entitled to judgment as a matter of law.

A.  
Standard of Review

          We review
de novo the trial court’s ruling on a summary judgment motion.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  To prevail on a traditional
summary judgment motion, the movant must establish that no genuine issues of
material fact exist and that he is entitled to judgment as a matter of
law.  Tex.
R. Civ. P. 166a(c); Little v. Tex.
Dep’t of Criminal Justice, 148 S.W.3d 374, 381 (Tex. 2004).  A party moving for summary judgment on his
own claim must conclusively prove all essential elements of the claim.  See
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Tex. R. Civ. P. 166a(a) (“A party
seeking to recover upon a claim . . . may, at any time
after the adverse party has answered or appeared, move with or without
supporting affidavits for a summary judgment in his favor upon all or any part
thereof.”).  A matter is conclusively
established if reasonable people could not differ as to the conclusion to be
drawn from the evidence.  See City of Keller v. Wilson, 168 S.W.3d
802, 816 (Tex. 2005).

          If
the movant meets his burden, the burden then shifts to the nonmovant to raise a
genuine issue of material fact precluding summary judgment.  See
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  The evidence raises a genuine issue of fact
if reasonable and fair-minded jurors could differ in their conclusions in light
of all of the summary judgment evidence. 
Goodyear Tire & Rubber Co. v.
Mayes, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).  To determine if the nonmovant has raised a
fact issue, we review the evidence in the light most favorable to the
nonmovant, crediting favorable evidence if reasonable jurors could do so, and
disregarding contrary evidence unless reasonable jurors could not.  See
Fielding, 289 S.W.3d at 848 (citing City
of Keller, 168 S.W.3d at 827).  We
indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.  See Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002)
(citing Sci. Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997)).

          We
must affirm the summary judgment if any of the grounds presented to the trial
court are meritorious.  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 216 (Tex. 2003); Pickett
v. Tex. Mut. Ins. Co., 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no
pet.).

B.  
Heinrich’s DTPA Claim

The trial court’s summary judgment
states that, “[w]ith respect to the cause of action for Breach of Warranty as a
violation of the Texas Deceptive Trade Practices Act as asserted by the
Plaintiffs, the Court finds in favor of said Plaintiff . . . .”  Generally, to recover for breach of an
express warranty under the DTPA, a plaintiff must prove that (1) he is a
consumer, (2) a warranty was made, (3) the warranty was breached, and (4)
as a result of the breach, an injury resulted. 
U.S. Tire-Tech, Inc. v. Boeran,
B.V., 110 S.W.3d 194, 197 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied); see also Head v. U.S. Inspect
DFW, Inc., 159 S.W.3d 731, 746 (Tex. App.—Fort Worth 2005, no pet.); see also Tex. Bus. & Com. Code Ann. § 17.50(a)(2) (Vernon
2011) (“A consumer may maintain an action where any of the following constitute
a producing cause of economic damages or damages for mental anguish:  breach of an express or implied warranty.”).  The DTPA does not define or create any
warranties.  U.S. Tire-Tech, 110 S.W.3d at 197 (citing Parkway Co. v. Woodruff, 901 S.W.2d 434, 438 (Tex. 1995)).  Warranties actionable under the DTPA must
first be recognized by common law or created by statute.  Id.  An express warranty is created when “a seller
makes an affirmation of fact or a promise to the purchaser that relates to the
sale and warrants a conformity to the affirmation as promised.”  Head,
159 S.W.3d at 746 (citing Humble Nat’l
Bank v. DCV, Inc., 933 S.W.3d 224, 233 (Tex. App.—Houston [14th Dist.]
1996, writ denied)).  Producing cause is
“a substantial factor which brings about the injury and without which the
injury would not have occurred.”  Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 481 (Tex. 1995).  The
plaintiff need not establish that the harm was foreseeable.  Id.

If the defendant’s conduct was
committed knowingly, the consumer may recover not more than three times the
amount of economic damages.  Tex. Bus. & Com. Code Ann.
§ 17.50(b)(1) (Vernon 2011); see
also Brown & Brown of Tex., Inc. v. Omni Metals, Inc., 317 S.W.3d 361,
395–96 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding evidence
legally and factually sufficient to support jury finding of “knowingly,” as
required for award of treble damages under DTPA).  The DTPA defines “knowingly” as:

[I]n an action brought under
Subdivision (2) of Subsection (a) of Section 17.50, actual awareness of the
act, practice, condition, defect, or failure constituting the breach of
warranty . . . actual awareness may be inferred where
objective manifestations indicate that a person acted with actual awareness.

 

Tex. Bus. & Com. Code
Ann. § 17.45(a)(9) (Vernon 2011); see
also St. Paul Surplus Lines v. Dal-Worth Tank Co., 974 S.W.2d 51, 53–54
(Tex. 1998) (defining “actual awareness” as “a person knows that what he is
doing is false, deceptive, or unfair and does it anyway”).

          Clear
Water contends that, when the nonmovant has not engaged in “flagrant bad faith
or callous disregard for the rules,” summary judgment is improper when the only
evidence supporting summary judgment is merits-preclusive deemed
admissions.  Clear Water further contends
that Heinrich used only the deemed admissions to support his DTPA claim, and,
without the deemed admissions, Heinrich has no evidence to support his claim
that (1) Clear Water breached a warranty, (2) Clear Water’s actions were a
producing cause of damages, and (3) Clear Water acted knowingly.

          “Admissions
of fact on file at the time of a
summary judgment hearing are proper summary judgment proof and will, therefore,
support a motion for summary judgment.”  Cedyco Corp. v. Whitehead, 253 S.W.3d
877, 880 (Tex. App.—Beaumont 2008, pet. denied) (emphasis in original); see also Tex. R. Civ. P. 166a(c) (allowing trial court to consider
admissions on file with court at time of hearing when rendering summary
judgment).  Although “[t]he rule
regarding requests for admissions does not contemplate or authorize admissions
to questions involving points of law,” and, thus, “responses to requests for
admissions merely constituting admissions of law are not binding on the court,”
Rule 198.1 does provide that admissions seeking to apply the law to a set of
facts are permissible.[3]  Boulet,
189 S.W.3d at 838; see also Tex. R. Civ. P. 198.1; Maswoswe, 327 S.W.3d at 896–97.

          As we
have already held, the trial court did not err in refusing to withdraw the
deemed admissions.  Thus, the admissions
of fact and admissions that applied the law to relevant facts are proper
summary judgment evidence and may support summary judgment.  See
Cedyco Corp., 253 S.W.3d at 880.  The
deemed admissions contained admissions that Clear Water warranted its work on
Heinrich’s decking for one year; that cracks began to form in the decking
within one month after installation; that Clear Water “misrepresented the
length and existence of a warranty because no attempts to fix the decking
[have] been made”; that Heinrich fully performed his contractual obligations;
that Clear Water knowingly used substandard materials; that Clear Water made
promises to repair the decking but did not intend to repair it; that Clear
Water knowingly promised to repair the decking to delay Heinrich from filing
suit; that, to restore Heinrich’s decking, the entire deck needed to be removed
and replaced; and that the total cost of restoring the deck is at least
$23,207.

          Contrary
to Clear Water’s assertion, Heinrich did not rely solely on the deemed
admissions to establish his DTPA claim. 
In addition to the deemed admissions, Heinrich included the following as
summary judgment evidence:  (1) the
written contract between Clear Water and himself; (2) the written
“guarantee/warranty” that explicitly stated that Clear Water “guarantees its
work to be free from defects in material and workmanship for a period of one
(1) year to the original owner (non-transferable) from completion of pool,
providing owner has complied in full with the terms and payments and other
conditions of this contract”; (3) photographs of the cracks in the concrete
decking, taken within one year of installation; (4) an e-mail from Talbott, in
which he opined that Clear Water had “got[ten] a hold of some bad concrete” and
stated that Clear Water “stand[s] by [its] warranties” and will fix the damage;
and (5) an affidavit that described the damages incurred and included a remodel
proposal from another pool company.

          We
conclude that, based on the summary judgment evidence presented to the trial
court, Heinrich conclusively established each element of his DTPA cause of
action for breach of an express warranty. 
Because Heinrich demonstrated that he is entitled to judgment as a
matter of law, we hold that the trial court correctly rendered summary judgment
in his favor on his DTPA claim.

          We
overrule Clear Water’s second issue.[4]

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Hinde.[5]

 











[1]
          Neither the affidavit of damages
nor the deemed admissions that were attached to Heinrich’s summary judgment
motion are included in the clerk’s record. 
The clerk’s record does contain copies of the requests for admissions
that Heinrich sent to both Talbott and Todd.





[2]
          The record reflects that
Heinrich served requests for disclosure pursuant to Texas Rule of Civil
Procedure 194, requests for production, and two sets of requests for
admissions.  Heinrich received no
responses to any of these discovery requests.





[3]
          Clear Water does not contend
that any of the admissions requests relevant to establishing Heinrich’s DTPA
claim seek admissions to questions involving points of law, and, thus, are not
binding on the court and are not proper summary judgment evidence.  See,
e.g., Marino v. King, No. 10-09-00368-CV,
2010 WL 3434620, at *4 (Tex. App.—Waco Sept. 1, 2010, no pet.) (mem. op.)
(raising issue of whether four admissions relied upon for summary judgment
sought legal conclusions).  Clear Water
merely contends that, absent the alleged improperly deemed admissions, Heinrich
presented no evidence to conclusively establish the elements of his DTPA claim.

 





[4]
          On appeal, Clear Water
additionally contends that Heinrich failed to conclusively establish the
elements of his breach of contract claim and, thus, was not entitled to summary
judgment on that claim.  Because we hold
that Heinrich conclusively established the elements of his DTPA claim and
because the final summary judgment reflects that Heinrich elected to recover
under the DTPA instead of on his breach of contract claim, we do not address
whether Heinrich conclusively established the elements of the breach of
contract claim.

 





[5]
          The Honorable Dan Hinde, Judge
of the 269th District Court of Harris County, Texas, participating by
assignment.  See Tex. Gov’t Code Ann.
§ 74.003(h) (Vernon 2005).